**FLORIDA POWER & LIGHT COMPANY, a Florida corporation, Plaintiff-Appellant,**

v.

**MID–VALLEY, INC., a Texas corporation, et al., Defendants,**

**Brown & Root, Inc. and Graeme R. Poke, Defendants-Appellees.**

No. 83–5506.

United States Court of Appeals, Eleventh Circuit.

June 24, 1985.

Rehearing Denied Aug. 14, 1985.

George Walker Wright, Jr., Steel Hector & Davis, Gerry S. Gibson, Darrey A. Davis, Miami, Fla., for plaintiff-appellant.

Warwick R. Furr, II, Vienna, Va., for Brown & Root, Mid-Valley & Graeme R. Poke.

Blackwell, Walker, Gray, Powers, Flick & Hoehl, James E. Tribble, Miami, Fla., for Underwriters at Lloyd's.

Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Henry Burnett, Miami, Fla., for United Engineers & Continental Cas.

Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, Roy D. Wasson, Miami, Fla., for William Conn, James Sherard and R. Linsley.

Mershon, Sawyer, Johnston, Dunwody & Cole, Aubrey V. Kendall, Miami, Fla., for Mid-Valley, Brown & Root and Graeme R. Poke.

Before KRAVITCH and HATCHETT, Circuit Judges, and HANCOCK *, District Judge.

HANCOCK, District Judge:

This is an appeal from summary judgments in favor of defendants-appellees Brown & Root, Inc. (hereinafter Brown & Root) and one of its engineers, Graeme R. Poke (hereinafter Poke). The underlying action arose out of the October 1979 sudden collapse and failure of an embankment associated with a cooling water reservoir constructed in Martin, Florida. Mid-Valley, Inc. (hereinafter "Mid-Valley"), a wholly-owned subsidiary of Brown & Root, had contracted with Florida Power & Light Company (hereinafter FPL) for engineering design work and for resident engineering services on this cooling water reservoir. Eighteen months after the collapse of the embankment, FPL brought an action against Mid-Valley, Brown & Root, Poke (who served as Project Engineer) and a variety of other defendants. A number of theories of recovery were stated in the complaint, but as to Brown & Root and Poke the claims were premised upon their alleged negligence in the design, engineering, surveying and construction surveillance work on the reservoir. After extensive discovery by the parties, Brown & Root and Poke sought summary judgment based on a limitation of liability clause in the contract documents. The district court granted summary judgment for both Brown & Root and Poke and entered final judgments in their favor under F.R.C.P. Rule 54(b). Those judgments are here on appeal. We affirm.

*Issues*

1. Whether under Florida law the limitation of liability clause exculpated the Engineer from damages caused by its own negligence.

---

* Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

2. Whether Brown & Root or Poke can claim the benefit of the limitation of liability clause.

*Effect of limitation of liability clause under Florida law*

FPL entered into three contracts for separate phases of work on the Martin Reservoir project. The first phase embraced initial permit and environmental impact work; the second phase embraced engineering design work; and the third phase embraced resident engineering and survey work during construction. The contracts for the second and third phases (which are the phases involved here) were with Mid-Valley and resulted from proposals submitted by Mid-Valley and accepted by FPL purchase orders. These proposals, and the resulting contracts contained the following limitation of liability clause and indemnity agreement:

Paragraph VIII

(8) Engineer shall provide the following insurance: Workmen's Compensation-Statutory; Employer's Liability—$100,-000; Comprehensive General Liability-Bodily Injury: $100/300,000, Property Damage—$50,000; Comprehensive Automobile Liability: Bodily Injury— $100/300,000 and Property Damage— $50,000. Upon written request of Owner received within five days of the acceptance hereof, Engineer will provide additional insurance, if available including increased coverage and/or limits, and the Owner will pay Engineer an agreed amount for the increased coverage. Engineer's liability to Owner for any indemnity commitments or for any damages arising in any way out of the performance of this contract is limited to such insurance coverages and amounts. *In no event shall Engineer be liable for any* indirect, special or consequential loss or *damage* arising out of the performance of services hereunder including, but not limited to, loss of use, loss of profit, or business interruption whether

*caused by negligence of Engineer,* or otherwise, *and Owner shall indemnify and hold Engineer harmless from any such damages or liability.* (emphasis supplied).

*University Plaza Shopping Center, Inc. v. Stewart,* 272 So.2d 507 (Fla.1973), discussed the enforceability of a contract clause for indemnification under Florida law where the effect of the clause was to exculpate the indemnitee for its own negligence.[1] A review by that court of case law from other jurisdictions revealed that in order for the indemnity contract to be construed as allowing indemnification for the indemnitee's own negligence, that intention must be expressed in clear and unequivocal terms. *Id.* at 509. Three variant views as to what constitutes clear and unequivocal language were found by the Florida Supreme Court. In the strictest approach, an indemnity clause indemnifying against "any and all claims" without express reference to negligent conduct is considered insufficiently "clear and unequivocal" and thus does not operate to indemnify the indemnitee against its own negligence. In the more liberal approach, the language "any and all claims" clearly covers all type claims, including negligent claims, and thus operates to indemnify the indemnitee against its own negligence. Finally, one line of cases is pragmatic and considers the language of the contract along with any other indications of the parties' intentions in determining whether the intention to indemnify the indemnitee against its own negligence was the intention of the parties. All three approaches have a common foundation, to insure that the contracting parties are alerted to the meaning of the indemnification clause. In an opinion expressly limited to injury caused by the sole negligence of the indemnitee, the Florida Supreme Court adopted the strict view, requiring an express reference to negligent conduct of the indemnitee.

1. This action was to determine the effect of an indemnity clause where the claim against which the indemnitee sought indemnification was one for wrongful death brought against the indemnitee by the indemnitor's estate.

■ FPL is familiar with this strict approach. In both *Florida Power & Light Co. v. Elmore*, 189 So.2d 522 (Fla.Dist.Ct. App.1966), and *Nat Harrison Associates, Inc. v. Florida Power & Light Co.*, 162 So.2d 298 (Fla.Dist.Ct.App.), *cert. denied*, 166 So.2d 754 (Fla.1964)[2], courts rejected FPL's attempts to enforce a contractual indemnity provision in situations where the indemnitee's negligence was the sole cause of the harm. Both courts found that the provision was not sufficiently clear and unequivocal. *See also Gulf Oil Corp. v. Atlantic Coast Line Railroad Co.*, 196 So.2d 456 (Fla.Dist.Ct.App.1967). Where language specifically alerts the indemnitor that the indemnitee's own negligence is part of the agreement, Florida law will allow the agreement to be enforced. Thus, in *Middleton v. Lomaskin*, 266 So.2d 678 (Fla.Dist.Ct.App.1972), the court granted summary judgment for a landlord in a tenant's suit for personal injuries where the contractual exculpatory provision stated that the landlord shall not be liable for "any and all claims for loss, damage or injury of any nature whatsoever to person or property ... whether caused by negligent acts of the LANDLORD, its agents or servants or otherwise." *Id.* at 679.

In *L. Luria & Sons, Inc. v. Alarmtech International Corp.*, 384 So.2d 947 (Fla. Dist.Ct.App.1980), the court applied a limitation of liability provision remarkably similar to that at bar. L. Luria & Sons, Inc. contracted with Alarmtech for the installation and servicing of a burglar alarm system. The contract provided an exculpatory clause.

It is agreed that Company is not an insurer and that the payments hereinbefore named are based solely upon the value of the services herein described and it is not the intention of the parties that Company assume responsibility for any loss occasioned by malfeasance or misfeasance in the performance of the services under this contract or for any loss or damage sustained through burglary, theft, robbery, fire or other cause or any liability on the part of Company by virtue of this Agreement or because of the relation hereby established. If there shall, notwithstanding the above provisions, at any time be or arise any liability on the part of Company by virtue of this Agreement or because of the relation hereby established, *whether due to the negligence of Company or otherwise*, such liability is and shall be limited to a sum equal to the rental service charge hereunder for a period of service not to exceed six months, which sum shall be paid and received as liquidated damages. Such liability as herein set forth is fixed as liquidated damages and not as a penalty and this liability shall be complete and exclusive. That *in the event Subscriber desires Company to assume greater liability for the performance of its services hereunder, a choice is hereby given of obtaining full or limited liability by paying an additional amount* under a graduated scale of rates proportioned to the responsibility, and an additional rider shall be attached to this Agreement setting forth the additional liability of Company and additional charge. That the rider and additional obligation shall in no way be interpreted to hold Company as an insurer.

Id. at 945 (emphasis supplied).

The court held that this clause totally excluded liability on the part of the burglar alarm company for damages caused by its own negligence. *Id.* at 948.

■ The contract at bar satisfies Florida's strict test applicable to cases where the indemnitee's sole negligence caused the damage. In clear and unequivocal terms the contract specifically listed the "negligence of the Engineer" as one cause of damage that was to be the subject of the exculpatory clause and the indemnity provision. The contract further limited the En-

---

**2.** Contractor, upon acceptance of this purchase order, agrees to hold the Company free and unharmed against any liabilities whatsoever resulting in connection with performance of the described work by Contractor or its employees. 189 So.2d at 523, 162 So.2d at 300.

gineer's liability for indemnity and damages to providing stated insurance coverage and like the contract provision in *Alarmtech*, it provided a means for FPL to increase that insurance coverage, albeit at additional cost to FPL. FPL expressly declined to do so. The district court correctly concluded that under Florida law the limitation of liability clause exculpated the Engineer from its own negligence and provided indemnification for the indemnitee's own negligence.

*Brown & Root's status as an intended third party beneficiary under the Mid-Valley/FPL contract*

■ Neither Brown & Root nor Poke were parties to the contracts. Nevertheless, pre-contract and post-contract dealings clearly show that FPL, Mid-Valley, and Brown & Root all contemplated Brown & Root's extensive participation in the project. Dealings between FPL and Brown & Root on other projects had prompted FPL to consider Brown & Root for the Martin Reservoir project. However, FPL was concerned about labor strife if Brown & Root (a non-union company) was given the contracts. Its wholly owned subsidiary Mid-Valley thus became the contracting party, but all parties knew that Brown & Root's employees were going to perform the work since the Mid-Valley staff of engineers was plainly insufficient to handle the work contemplated by FPL for the Martin Reservoir project. In the words of FPL's own Senior Vice President, Mr. Robert Gardner:

Q Was it your understanding, from what you do know of the circumstances leading up to the contract with Mid-Valley for the Martin engineering work that Brown & Root personnel would be assisting, if necessary, in connection with the execution of work?

A It was Brown & Root people that were doing the job. The people that I was dealing with in the licensing, were Brown & Root people.

Brown & Root people that had done the reservoir, design work on Mana-

tee—it was Brown & Root people that made the presentations to the Southwest Water Management Board and the Central and Southern Flood Board, and it was Brown & Root people that we relied upon to build the reservoir and get the license and so forth.

Q But in order to accommodate the union specification that Florida Power & Light had for the work, the contract was with Mid Valley; is that correct?

A This was Brown & Root's way of accommodating our specification, yes.

Deposition of Robert J. Gardner, pp. 35–36.

Even more revealing are the following questions and answers during the deposition of Walter H. Rogers, Jr., Chief Engineer—Power Plants for FPL:

Q Did you have any understanding as to who would be performing work under that purchase order?

A The purchase order was sent to Mid-Valley, and Brown & Root would be doing the design effort for Mid-Valley.

Q How did you know that Brown & Root would be doing the design effort for Mid-Valley?

A Well, all previous meetings we had were with Brown & Root people, and we knew that Mid-Valley did not have an organization, did not have an engineering organization.

Q Was it your understanding that Brown & Root would be providing engineering assistance to Mid-Valley?

A Yes.

Q Under the contract that you hold in your hand?

A Yes.

Q Was it your understanding that that agreement was to apply to both Mid-Valley and Brown & Root, as assisting Mid-Valley in this work under this agreement?

A Yes.

Deposition of Walter H. Rogers, Jr., pp. 43–44.

FPL argues vehemently that factual disputes still exist with regard to the role of Brown & Root in the project so that summary judgment was not proper. We disagree. The material facts are undisputed.

The only dispute is the legal effect of the following facts: (1) FPL met with Brown & Root to discuss its designing of the reservoir; (2) primarily because of fear of labor strife through the direct use of Brown & Root and its "open shop" approach, FPL requested that the contract be placed with Mid-Valley, a wholly-owned subsidiary of Brown & Root; (3) this was consistent with two earlier jobs performed for FPL by Brown & Root; (4) Mid-Valley lacked the means of doing the work; (5) employees of Brown & Root in some capacity were to perform the work; (6) FPL was relying on the knowledge and experience of the employees of Brown & Root; (7) basically the design work was performed by employees of Brown & Root; (8) the Project Engineer, Poke, was an employee of Brown & Root; and (9) all concerned knew, understood and accepted that the transaction was between FPL and Brown & Root. FPL would not even be in a position to argue that disputed facts still exist were it not for Brown & Root's unfortunate (and perhaps less than candid) approach to discovery. Earlier in this litigation, Brown & Root took the position that its engineers who performed the contract work did so as *borrowed servants* of Mid-Valley, under the supervision and control of Mid-Valley, and hence neither it nor its employees *as such* were involved in the contract. While Brown & Root's initial responses to discovery requests (e.g., "this defendant says that it was not involved in the contract or the project") may have been technically correct under legal theories associated with its borrowed servants defense, FPL was expressly told by Brown & Root's responses to discovery requests that "Brown & Root did loan engineering employees to Mid-Valley" for the benefit of FPL (Supplemental Response of Brown & Root, R. 1285). There simply is not now, nor has there ever been a dispute over the fact that Brown & Root's engineers, either on its payroll and under its supervision and control or loaned to Mid-Valley and placed on its payroll and under its supervision and control, did the engineering work. All parties knew and intended this to be the case.

██ Brown & Root claims the benefit of the exculpatory and indemnity provisions as an implied third party beneficiary of the contract between its subsidiary Mid-Valley and FPL. Once again, this is a question for which this court must rely on Florida law. Florida courts have long recognized that a third party beneficiary need not be named in the contract, but that its status may be established by pre-contract and post-contract actions of the parties. *See Goodell v. K.T. Enterprises, Ltd.,* 394 So.2d 1087 (Fla.Dist.Ct.App.1981). In *Goodell* a corporation not made an express party to a contract was allowed to maintain an action as the third party beneficiary. The pre-contract dealings indicated that the product was to be shipped to the corporation and installed according to the corporation's instructions, and that title was to be taken in the name of the corporation. In the contract, the individual took title as an express decision of the individual and the corporation. The court explained that "the precontract dealings of the parties, the contract itself, and the subsequent dealing of the parties show that the clear intent and purpose of the contract was to directly and substantially benefit [the corporation]." *Id.* at 1089. *See also Paltuco Caribbean v. Percy Wilson Mortgage,* 419 So.2d 343 (Fla.Dist.Ct.App.1982); *Cooper v. S.B.S. Security Service, Inc.,* 281 So.2d 524 (Fla. Dist.Ct.App.1973), *cert. denied,* 287 So.2d 95 (Fla.1973); *Gulf Cities Gas Corp. v. Tangelo Park Service Co.,* 253 So.2d 744 (Fla.Dist.Ct.App.1971).

The dealings between Mid-Valley and FPL unequivocally demonstrate that they intended for the formal agreement to cover in substance all the participants in the undertaking, including Brown & Root and the employees of Mid-Valley and Brown & Root. Both Mid-Valley and FPL intended the bulk of the actual work to be done by employees of Brown & Root and knew that it was being done by those employees. Brown & Root is an intended third party beneficiary of the contract. As such it is entitled to the protective umbrella of the limitation of liability clause and the indemnity provision in the contract. The district court correctly granted summary judgment in favor of Brown & Root on the claims pursued against it in the complaint since

those claims are predicated on the alleged negligence of Brown & Root.

*Poke's liability limited*

Poke was the Project Engineer on the project. FPL claims that he was negligent with regard to surveying and construction surveillance work. Poke had been a Brown & Root employee prior to this project, during which time he was working in the Mid-Valley office. We do not need to decide whether he had changed employers or was a borrowed servant for purposes of this appeal. Corporations can only act through agents. An indemnity, limitation of liability or exculpatory clause negotiated and subsequently contracted for by a corporation presumptively includes the acts of employees and agents of the corporation within the line and scope of the agency relationship. Otherwise such clauses would be a nullity. Poke is obviously a beneficiary of the limitation of liability clause, and the district court correctly granted summary judgment in his favor.

For the reasons herein stated, the F.R. C.P. Rule 54(b) final judgments in favor of Brown & Root and Poke are AFFIRMED.