[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 24, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15788
Non-Argument Calendar

_____

D. C. Docket No. 04-20532-CV-UUB

HARTFORD INSURANCE COMPANY
as Subrogee of Frangrance's Mart, Inc.,

Plaintiff-Appellant,

versus

BELLSOUTH TELECOMMUNICATIONS, INC.,

Defendant-Third
Party-Plaintiff-
Appellee,

versus

HORIZON SECURITY SYSTEMS,

Third-Party-
Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 24, 2006)**

Before ANDERSON, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

The Hartford Insurance Company ("Hartford"), as subrogee of Fragrance's Mart, Inc., appeals the district court's order granting judgment as a matter of law to BellSouth Telecommunications, Inc. ("BellSouth") in this diversity negligence action. Fragrance's Mart, a wholesaler of perfumes and other fragrances, bought a burglar alarm for its merchandise warehouse from Continental Technology, Inc. ("Continental"). Included in the burglar alarm package was a monitoring service provided by Horizon Electronics, Inc. ("Horizon"). If the burglar alarm detected an unauthorized entry, it was supposed to notify Horizon, which would then call the police.

The effectiveness of the monitoring service depended directly on the integrity of the telephone line connecting the alarm and Horizon. To prevent burglars from cutting the line and circumventing the monitoring service, the alarm system also included the WatchAlert service. A WatchAlert transmitter at the warehouse sent a signal every twenty-six seconds over the telephone line to BellSouth. If BellSouth missed a signal, it would presume the line had been cut and notify Horizon, who would treat it as a positive alert and dispatch the police.

Over the Thanksgiving holiday weekend in 2001, the Fragrance's Mart

warehouse was burglarized. Hartford compensated its insured Fragrance's Mart for its losses under a general liability policy. Hartford then filed suit against BellSouth, alleging that BellSouth's negligent operation of the WatchAlert system allowed the burglars to enter undetected. After Hartford presented its case to a jury, the district court granted judgment as a matter of law to BellSouth under Fed. R. Civ. P. 50(a)(1). The court found that a limitation of liability clause in the contract between Fragrance's Mart and Continental applied to BellSouth and capped its liability at $250. BellSouth then stipulated to the entry of a final judgment in the amount of $250.

On appeal, Hartford argues that the limitation of liability clause does not apply to BellSouth, and that on remand, judgment must be entered against BellSouth because it admitted liability. We conclude that the plain language of the limitation of liability clause applied to BellSouth, and thus need not address the effect of BellSouth's admission of liability.

We review grants of judgment as a matter of law de novo. Abel v. Dubberly, 210 F.3d 1334, 1337 (11th Cir. 2000). Judgment as a matter of law is proper if, viewing the evidence in the light most favorable to the non-moving party, and drawing all reasonable inferences in favor of the non-moving party, no reasonable jury could arrive at a contrary verdict. Combs v. Plantation Patterns, Meadowcraft,

3

Inc., 106 F.3d 1519, 1525 (11th Cir. 1997).

The district court granted judgment as a matter of law on the basis of a limitation of liability clause in the Electronic Alarm Agreement ("EAA") between Fragrance's Mart and Continental. The agreement provides, "Any company which renders monitoring or other services in connection with this alarm agreement may invoke the provisions herein against the Customer and against any claims made by the Customer, and Customer agrees to be bound by the provisions of the Agreement." The limitation of liability clause, also in the EAA, states,

> Since it is impractical and extremely difficult to fix actual damages which may arise from the failure on the part of the Company to perform any of its obligations hereunder, or the failure of the system to operate properly, if not, withstanding [sic] the above provisions, there should arise any liability on the part of the Company, such liability shall be limited, to an amount equal to six (6) times the monthly service charge shown herein, or the sum of Two Hundred Fifty Dollars ($250.00) whichever is less. . . . The Company is not liable for the gross negligence or the ordinary negligence of its employees, agents and assigns.

The district court found that BellSouth was a company that rendered services in connection with the alarm agreement, and accordingly was protected by the agreement's limitation of liability clause.

We agree that the clause unambiguously applies to limit BellSouth's liability. We first note that Florida enforces limitation of liability clauses in burglar alarm

4

service contracts. <u>Ace Formal Wear v. Baker Protective Serv., Inc.</u>, 416 So.2d 8, 9 (Fla. 3d Dist. Ct. App. 1982). Such clauses are valid to limit liability for negligence. <u>Cont'l Video Corp. v. Honeywell, Inc.</u>, 422 So.2d 35, 36 (Fla. 3d Dist. Ct. App. 1982). Further, in Florida, third-party beneficiaries may enforce limitation of liability clauses. <u>Florida Power & Light Co. v. Mid-Valley, Inc.</u>, 763 F.2d 1316, 1321 (11th Cir. 1985). Thus, if the clause applies to BellSouth, its liability is capped under Florida law.

The interpretation of a contract is a question of law to be decided by the court. <u>Barone v. Rogers</u>, 930 So.2d 761, 764 (Fla. 4th Dist. Ct. App. 2006). The clause in the EAA applies to "any company which renders monitoring or other services in connection with this alarm agreement." BellSouth was clearly such a company. The EAA itself provided for the WatchAlert service. On the face of the EAA, a box beside "telephone line security" is checked. Then, in the "payment" section, the term "WatchAlert" is written beside a payment term of "$250.00," which was the cost of installing the WatchAlert transmitter. Further, the same day Fragrance's Mart signed the EAA, it also signed the "WatchAlert Service Letter of Authorization," which authorized BellSouth to perform the WatchAlert service. It was thus clear from the very day that Fragrance's Mart signed the EAA that the alarm system included the WatchAlert service and that BellSouth was going to provide it. The parties clearly

5

contemplated that BellSouth would render services in connection with the EAA.

But even if the EAA and Letter of Authorization had not mentioned WatchAlert or BellSouth, the service was still rendered "in connection with" the EAA because it was a crucial component of the alarm system that the EAA provided. Hartford acknowledges in its brief that "[t]he WatchAlert service is an important enhancement to a burglar alarm system because the signal transmitted by a burglar alarm system is conducted over telephone lines." The success of the alarm system in the EAA depended directly on the WatchAlert system, which ensured the integrity of the telephone connection between the alarm and Horizon. Further, the WatchAlert system depended on BellSouth's involvement. BellSouth was responsible for monitoring the transmission that occurred every twenty-six seconds and notifying Horizon if that transmission was interrupted. BellSouth thus obviously provided services "in connection with" the EAA and may take advantage of the limitation of liability clause.

Hartford's attempts to evade the clear language of the limitation of liability clause are unsuccessful. First, Hartford argues that WatchAlert was not a monitoring service. But whether it was a monitoring service or not is irrelevant, because the clause also covered "other services," which includes BellSouth's services. Second, Hartford argues that "in connection with" only refers to services explicitly mentioned

in the EAA. Hartford notes that BellSouth's portion of the services was provided in a different contract and was billed separately, and contends that the references to WatchAlert in the EAA meant only the installation of the physical transmitter, not the services BellSouth would provide. Hartford's argument, however, runs up against two difficulties. First, the EAA did mention the WatchAlert service. Second, the clear language of the clause applies to "any company" that renders services in connection with the EAA, not just to those companies mentioned explicitly in the EAA. BellSouth was clearly such a company.

Next, Hartford argues that BellSouth's negligence was not covered by the limitation of liability clause. This claim is belied by the language of the limitation of liability clause, which provides that BellSouth "is not liable for the gross negligence or the ordinary negligence of its employees, agents and assigns." This can only mean that BellSouth is not liable for negligence it committed in the course of operating or failing to operate the WatchAlert system.

Finally, Hartford argues at great length that the district court necessarily found the clause to be ambiguous, and that it erred by admitting extrinsic evidence to construe the ambiguity. The district court, however, explicitly found that the clause is *not* ambiguous. We agree with the district court that "any company which renders monitoring or other services in connection with this alarm agreement" is

unambiguous.  As Florida courts have repeatedly found, "any" is a word of broad significance meaning "every" or "all."  See, e.g., Dows v. Nike, Inc., 846 So.2d 595, 601 (Fla. 4th Dist. Ct. App. 2003); Acceleration Nat'l Service Corp. v. Brickell Financial Services Motor Club, Inc., 541 So.2d 738, 739 (Fla. 3d Dist. Ct. App. 1989).  Here, "any" includes every company rendering services in connection with the alarm agreement, including those not named in the agreement.  The phrase "in connection with" is also unambiguous.  It restricts the clause's application to those companies whose services have some relationship to the EAA.  BellSouth's services had a strong relationship to the EAA and thus fell within the meaning of the clause.

Upon determining that this language was not ambiguous, it was proper for the district court to apply it to BellSouth.  Whether a contract is ambiguous is a question of law in Florida.  Escobar v. United Auto Ins. Co., 898 So.2d 952, 954 (Fla. 3d Dist. Ct. App. 2005).  "Where the language of a contract is unambiguous and not subject to conflicting inferences, construction of the contract is a question of law for the court, not a question of fact for the jury."  Weingart v. Allen & O'Hara, Inc., 654 F.2d 1096, 1103 (5th Cir. Sept. 1981).  The district court properly determined, as a matter of law, that the language of the contract was unambiguous and that it applied to BellSouth's services.  The doctrines relating to interpretation of ambiguities are irrelevant, because the clause here unambiguously covered BellSouth.

The district court correctly held that the limitation of liability clause applies to BellSouth, and its judgment is therefore

**AFFIRMED.**