WIGGINTON, Judge.
This appeal arises from a final summary judgment in a third party action brought by Gulf Power Company against BPS Guard Services, Inc., wherein two young boys were tragically killed by a motorist resulting in a settlement of the claim by Gulf Power and this action for indemnification against BPS Guard Services. The trial court concluded in its summary judgment only that there was no genuine issue as to any material fact in regard to the claim of Gulf Power for indemnity against BPS, and that summary judgment therefore should be entered in favor of Gulf Power on its third party complaint against BPS. We affirm in part, reverse in part, and remand for further proceedings.
Prior to March 18, 1981, Gulf Power sent out an “invitation to bid” and bid specification package to companies in the business of providing security guards. Burns International Security Service, Inc., the parent corporation of BPS, was the successful bidder, and on March 18, 1981, the parties entered into the contract which has become the focal point of this litigation.
Section 2.14[1] of the bid specification set forth the proposed contract requirements relating to indemnity. When the contract was prepared for signature, the bid specifications were incorporated by reference into the contract, and a provision entitled “Liability” and shown as paragraph four,[2] was included in the contract. BPS began furnishing the services called for in the contract at Gulf Power’s Crist Steam Plant on March 31, 1981. Further recitation of the facts is not necessary for resolution of the several issues posed by appellant.
The theory of the plaintiffs in the primary suit was that Gulf Power was liable for the deaths of the decedents because its representatives, including employees of BPS, had knowledge of incidents that put Gulf on notice that it should take action to eliminate a dangerous condition. Gulf Power asserts that the indemnity agreement did not require a breach of the contract in order for the duty to indemnify to arise as it is only necessary that the claim for damages that was asserted against Gulf Power be related to or in any way associated or connected with the performance of the work under the contract between Gulf and BPS. On the other hand, *640 BPS took the position that the original plaintiffs contended that Gulf was liable for acts and omissions totally unconnected with the guard service’s responsibilities under the contract between BPS and Gulf Power. BPS concludes that at the very least, there was a jury issue as to whether the plaintiffs’ claim came within the scope of the agreement.
In the third party action, BPS denied liability, alleging certain defenses and moved for summary judgment, which was denied. Gulf settled the cases with the plaintiffs for $400,000 for each family because of concern that a jury might become incensed with the facts involved. Final summary judgment was entered in favor of Gulf against BPS and this appeal followed.
We are persuaded that the critical issue of fact in regard to the claim of Gulf Power Company for indemnity against BPS remains unresolved. The pivotal jury question was raised on the issue of whether the plaintiffs’ claims were ones “arising out of, related to, or in any way associated or connected with the performance of any work” covered by the contract, as contemplated by paragraph four therein. Pertinent to this issue is the proper exercise of discretion and duties of the BPS guards, the Gulf Power security personnel, and the actions of each under the terms of the contract and existing circumstances.
Without further findings and elaboration in the final summary judgment, a reviewing court can only surmise as to whether the settlement by the plaintiffs and Gulf Power was based upon the sole negligent acts of Gulf Power totally outside the contract parameters or Gulf Power or BPS alone or in conjunction with each other in negligent acts that may have arisen out of, been associated with or connected with the performance of the work under the contract, again for conduct arising out of the contract as contemplated by paragraph four. These matters are properly left for jury determination.
Appellant next argues that the indemnity provision appearing in paragraph four of the contract and the indemnity provision appearing in the bid specification and incorporated into the final contract by reference are contrary to each other and conflicting in their terms since the latter provision does not provide for indemnity based solely upon Gulf Power’s negligence. We agree with appellee that there is no direct conflict between the terms of the bid specifications and the final contract. However, as critically stated in Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Company, 374 So.2d 487 (Fla.1979), such contracts will be enforced only if they express an intent to indemnify against the indemnitee’s own wrongful acts in clear and unequivocal terms.
If it were to be interpreted that an ambiguity existed, the parties seem to be in accord that the specific language included in paragraph four of the final contract is the type that has been approved by Florida courts as creating an obligation to indemnify another from damages based on the other’s sole or joint negligence. Nevertheless, in either event, liability will not exist unless and until it is proven that the claim falls within the terms of the indemnity agreement.
The court notes that following the invitations for bid, the contract award was made to BPS on March 18,1981, and services commenced on the thirty-first of that month. BPS then proceeded to operate under the terms of the contract from that date forward until 1985 when it was called upon to indemnify Gulf Power under the provisions thereof. If BPS believed the terms of paragraph four of the contract were not consistent with paragraph 2.14 of the bid specification it should have initially refused to sign the contract or sought judicial review for clarification before the fact. We must assume from the trial court’s final summary judgment that there was no issue as to the applicability of paragraph four to the facts involved. We affirm the trial court’s obvious conclusion that the language of paragraph four of the contract prevails but do not agree that the pivotal issue of whether the claim falls within the *641 other terms of the indemnity agreement has yet been resolved by the proper forum, a jury.
The final point that requires discussion is appellants’ incorrect contention that the trial court erred in striking its affirmative defenses. A close examination of the pleadings and record leads us to the conclusion that the “affirmative defenses” raised by appellant are not in the form of a confession and avoidance, Tropical Exterminators, Inc. v. Murray, 171 So.2d 432 (Fla.2d DCA 1965), cert. denied, 177 So.2d 475 (Fla.1965), but are mere denials. The remaining issues do not warrant discussion and are affirmed.
The final summary judgment is reversed and this case is remanded to the trial court for further proceedings.
SHIVERS and THOMPSON, JJ., concur.

. 2.14 Indemnity
The Contractor shall defend, indemnify and save harmless the Client against any and all actions, claims, damages, costs, expense and liability remotely or proximately caused by, or connected with the performance of the Contract or any amendment or alteration thereof, or any extra work performed in connection wherewith for which said Client may in whole or in part become in any way liable. The provisions of this section shall not be limited by the provisions of Section 2.13 of this Contract or limited by the limits and coverage of liability insurance carried by Contractor.

. 4. Liability — You hereby agree to indemnify and hold us and our agents, servants, and employees harmless from any and all claims, damages, suits, or actions of any character for damages to property and for injury or death to persons arising out of, related to, or in any way associated or connected with the performance of any work covered by this contract, or any work on the project to which this contract relates, in whatever manner, the same may be caused and whether or not the same be caused, occasioned, or contributed to by the negligence, sole or concurrent, of us or our agents, servants, or employees. You will be responsible for all damages and injury to property of any character during your prosecution of the work, and until the contract will have been completed and the work accepted by us which may result from any act, omission, neglect, or misconduct in the manner or method of executing the work, or from any failure to perform it satisfactorily, or resulting from the nonexecution of the work at any time, or any defective work or materials.