FARMER, Judge.
The actual employer of an injured worker appeals a final order holding it liable in common law indemnification to a “statutory employer” of the same employee. We reverse.
The facts can be briefly summarized. United Shows [United] had a contract with the South Florida Fair [Fair] to provide amusement rides for the midway. United, in turn, subcontracted with appellant Candy-world to supply and operate some of the rides. One of Candyworld’s workers was seriously injured while one of the rides was being operated by another Candyworld worker; he received workers compensation benefits from his employer’s insurer. The worker then sued United alleging that it was negligent in failing to provide a safe workplace. United defended by claiming, among other things, workers compensation immunity.[1] United also brought Candyworld into the suit as a third-party defendant, claiming that Candyworld was or should be liable to United for all or part of any judgment that the injured worker might obtain against United.
Both the injured worker and United filed pretrial motions for summary judgment on United’s immunity defense. Both motions *1167 were denied.[2] Later, United dropped its third-party claim against Candyworld. Much later in the case and before trial, United settled with Candyworld’s worker. After paying its share of the settlement, United instituted the present action against Candy-world for common law indemnification. Can-dyworld alleged that it was immune from any such liability under the workers compensation law. The trial court rejected that defense and entered a summary judgment against Candyworld on the indemnification claim. We now proceed to review that order.[3]
Candyworld constructs the following syllogism to demonstrate its entitlement to judgment on the indemnification claim: an indem-nitee who had no obligation to pay the underlying claim in the first place is not entitled to common law indemnification; United had no obligation to pay the injured worker’s claim because of its workers compensation immunity; therefore United is not entitled to common law indemnification from Candyworld. We discuss the minor premise first.
Under Florida’s workers compensation law, a contractor who subcontracts part of its contractual obligation to another becomes the statutory employer of the subcontractor’s employees. See § 440.10(1), Fla. Stat. (1993); Motchkavitz v. L. C. Boggs Industries Inc., 407 So.2d 910 (Fla.1981); and Lingold v. Transamerica Ins. Co., 416 So.2d 1271 (Fla. 5th DCA 1982). As explained by the court in Motchkavitz:
“Section 440.10 establishes the concept of ‘statutory employer’ for contractors who sublet part of their work to others. Section 440.11 provides that the liability established in section 440.10 is ‘exclusive.’ The effect of section 440.10 is that where a subcontractor performing part of the work of a contractor fails to secure payment of compensation, the contractor is liable for same. If both subcontractor and contractor fail to secure coverage, then the contractor has an employer’s liability to the subcontractor’s injured employee for purposes of an action for statutory benefits or damages at law or in admiralty. * * *
“The exclusiveness of liability provided for by section 440.11 extends to an employer’s ‘liability’ as defined in section 440.10. Thus a contractor who sublets part of its work to a subcontractor, being liable to secure coverage for employees of its subcontractor, is also immune from suit by such employees when such coverage has been secured. It is the liability to secure coverage for such employees in the event the subcontractor does not do so that immunizes a contractor from suit by such employees. Jones v. Florida Power Corp., 72 So.2d 285 (Fla.1954).”
407 So.2d at 912-913.
United now argues that its immunity defense to the workers claim was doubtful because its subcontract with Candyworld “exceeded” its contract with the South Florida Fair. Its contract with the Fair required it to provide “not less than” (*) rides, while its subcontract with Candyworld had the effect of supplying the Fair with (x + y) rides. In other words, according to United:
“Candyworld was an independent contractor working outside [its] contract with the South Florida Fair [sic], rather than a subcontractor under that contract. Or at least, a judge or jury could have so decided.”
We do not agree.
The mere fact that Candyworld agreed to supply more amusement rides than the minimum number that the Fair required from *1168 United does not destroy the essential character of the agreement between United and Candyworld as a subcontract. United was not precluded by the agreement with the Fair from exceeding the minimum number of rides; it was merely obligated to supply not less than that number. It could supply more; and, if it did, that fact did not amount to a breach of its contract with the Fair. Without a breach, it cannot be fairly said that United was working “outside” of its contract. Hence we hold that the United-Candyworld agreement was a subcontract by which United had “sublet” part of its obligation with the Fair to Candyworld and thereby acquired workers compensation immunity as to the claim in suit.
The principal attempt of United to avoid the syllogistic argument of Candyworld lies in its argument that Candyworld was “vouched in” by virtue of notice of the pending settlement, and an opportunity to either obtain a better settlement or provide a defense to the lawsuit. Noting that its settlement with the injured worker was free from fraud or collusion, United argues that Florida recognizes the principle that any settlement becomes conclusive against a potential indemnitor who has been so “vouched in”. We have two major problems with this argument.
The first is with notice. The notice in question was given several months after Can-dyworld had been dropped as a third-party defendant in the workers lawsuit. The insurance carrier for Candyworld provided both workers compensation coverage and, separately, general liability coverage. When Candyworld was named as a third-party defendant in the injured employee’s action against United, the carrier retained attorney Galatis to represent it in that action. Meanwhile the same carrier had retained attorney Williams to handle workers compensation matters relating to the injured employee. After Candyworld was dropped in the action against United, routine notices in the action continued to be sent to Galatis, even though Candyworld was no longer a party. When a mediation conference was scheduled in the action, the injured employee’s attorney wrote attorney Williams and invited the workers compensation carrier to attend mediation conferences and participate. The carrier did so through a claims adjustor and attorney Williams. United argues that this amounted to adequate notice to Candyworld to establish vouching in liability for common law indemnification.
A workers compensation carrier who has paid benefits to a covered employee has a lien on any recovery by the injured employee in an ordinary personal injury action against a third-party tortfeasor liable for the injury. See § 440.39(2), Fla.Stat. (1993). Hence, notice to the workers compensation attorney under the circumstances of this case is insufficient to “vouch in” Candyworld because that kind of notice would be readily understood as related to that carrier’s subrogation rights to recover benefits paid to the injured employee from the tortfeasor causing those injuries. The mere fact that United’s attorney told the workers compensation adjustor during mediation that United intended to seek common law indemnification from Can-dyworld does not convert what was essentially notice to a workers compensation carrier relating to its lien rights into notice to the injured employee’s employer that the third party tortfeasor would look to it for indemnification. Thus, even assuming that Florida law would recognize the kind of “vouching in” liability for an indemnitor that is contended here — see e.g. Limor v. Conli, 424 So.2d 31 (Fla. 3d DCA 1982); Hull & Co. v. McGetrick, 414 So.2d 243 (Fla. 3d DCA 1982); MacArthur v. Gaines, 286 So.2d 608 (Fla. 3d DCA 1973); Grain Dealers Mut. Ins. Co. v. Quarrier, 175 So.2d 83 (Fla. 1st DCA 1965); and Westinghouse Elec. Corp. v. J.C. Penney Co., 166 So.2d 211 (Fla. 1st DCA 1964) — we do not regard the notice given in this case as sufficient to implicate it.
Secondly, we agree with Candyworld that an indemnitee who has voluntarily paid the claim may not establish vouching in liability against a potential indemnitor. Scott and Jobalia Const. Co. v. Halifax Paving Inc., 538 So.2d 76 (Fla. 5th DCA 1989), aff'd., 565 So.2d 1346 (Fla.1990). The relationship between the indemnitor and indemnitee in Scott and Jobalia is sufficiently analogous to the parties here. For as the Fifth District *1169 observed in Scott and Jobalia, the various fact patterns in this setting — lease of a dangerous instrumentality, independent contractor versus subcontractor, ownership of the instrumentality — are without meaningful distinction where the question of common law indemnity turns on workers compensation immunity. Here, as in Scott and Jobalia, both the indemnitor and indemnitee share workers compensation immunity to the injured worker’s suit. In that circumstance, the payment by the putative indemnitee was purely voluntary, thus precluding any liability for common law indemnification.
Our decision on this issue renders moot all other issues raised. We deny all motions for attorney’s fees.
REVERSED AND REMANDED FOR ENTRY OF JUDGMENT IN FAVOR OF CANDYWORLD.
STONE and STEVENSON, JJ., concur.

. See § 440.11, Fla.Stat. (1993).

. On appeal, United argues that the denial of summary judgment finally adjudicated the immunity defense to the employee's negligence claim. We disagree. The denial of summary judgment represented the trial court's determination merely that the facts supporting the defense were not then so crystallized as to be free of conflict. That decision plainly left open the possibility of a ruling in favor of United on this issue at trial— e.g., on a motion for directed verdict.

. Both United and Candyworld were covered by one or more policies of insurance, and this indemnification action is filled with insurance carriers suing or defending as subrogees of their insureds. Because the entitlement to common law indemnification is based on the interests and positions of the insureds, we treat the issues raised as though raised directly by the insureds, rather than the insurance carriers. The result in this case is the same, whether it is the carrier making the argument or not.