166 So.2d 211 (1964)
WESTINGHOUSE ELECTRIC CORPORATION, a corporation, Appellant,
v.
J.C. PENNEY COMPANY, Inc., a corporation, Appellee.
No. E-355.
District Court of Appeal of Florida. First District.
June 11, 1964.
Rehearing Denied August 5, 1964.
*212 Mathews, Osborne & Ehrlich, Jacksonville, for appellant.
Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for appellee.
RAWLS, Judge.
Appellant Westinghouse Corporation entered into a contract on April 20, 1955 with appellee J.C. Penney Company, Inc., Jacksonville, Florida, wherein Westinghouse agreed to maintain Penney's elevator equipment *213 and electric stairways (escalators) located in a building occupied by Penney in Jacksonville, Florida. Salient provisions of the said contract were:
"The Company [Westinghouse] will regularly and systematically examine, adjust, clean, lubricate, furnish lubricants, and when conditions warrant, repair or replace: MACHINE, MOTOR, GENERATOR AND CONTROLLER PARTS, including: Worms, Gears, Thrusts, Bearings, Brake Magnet Coils, Brake Shoes, Brushes, Windings, Commutators, Rotating Elements, Coils, Contacts, Resistors, Magnet Frames, and other mechanical parts.
"The Company will keep the Guide Rails properly lubricated at all times except where roller guides are used, and when necessary, renew guideshoe gibs or guide rollers in order to assure smooth and quiet operation.

* * * * * *
"It is understood, in consideration of our performance of the service enumerated herein at the price stated, that nothing in this agreement shall be construed to mean that the Company assumes any liability on account of accidents to persons or property except those directly due to negligent acts of the Company or its employees, and that the Purchaser's own responsibility for accidents to persons or properties while riding on or being on or about the aforesaid equipment referred to, is in no way affected by this agreement. * * *" [Emphasis supplied.]
While said contract was in full force and effect, Mrs. Frieda Solomon, a business invitee, fell and injured herself on an escalator in Penney's store. Mrs. Solomon brought suit against Penney alleging negligent maintenance of the escalator causing the same to jerk as the proximate cause of her injuries. Penney immediately informed Westinghouse of the action, demanded that it defend same, and after Westinghouse refused to accept the defense of the suit, Penney defended it but kept Westinghouse informed of the proceedings at all times. During the trial of this suit Mrs. Solomon and her grandson testified that the escalator "jerked" and as a result of the jerking she suffered the accident. Mrs. Solomon recovered a verdict and judgment in the sum of $500.00 against Penney. Thus Mrs. Solomon's judgment was recovered upon the theory of injury caused by the negligent maintenance of Penney's escalator. Penney advised Westinghouse of the outcome and suggested that Westinghouse prosecute an appeal which was not done.
We now reach the subject matter of the instant appeal. Penney sued Westinghouse seeking reimbursement as a result of the Solomon suit and upon motion and proofs recovered a summary final judgment against Westinghouse from which Westinghouse now appeals. Appellant urges that the trial court erred in granting summary judgment for Penney and asserts the following material points on this appeal, viz:
1. There is no right of indemnity between joint tort-feasors when both are primarily liable.
2. There is no right of indemnity in the absence of primary fault.
3. The judgment is not conclusive on Westinghouse.
We do not agree with appellant's premise as stated in Point 1 which assumes that both of the instant parties are primarily liable. From an examination of the record, we find no theory or proof of any active negligence on the part of Penney to Mrs. Solomon, its liability being based upon ownership of the escalator. The able trial judge in his summary judgment correctly determined said point when he stated:
"The record of the proceedings in the Solomon case shows that the case was tried upon the theory of negligent maintenance as charged in the complaint. The verdict awarding damages *214 to the plaintiff, and the judgment based on the verdict, was a judicial determination that the escalator was negligently maintained. Since the defendant, Westinghouse, had notice of the pendency of the suit and was afforded an opportunity to defend, this judgment is conclusive of that issue as to Westinghouse. 27 American Jurisprudence 478, Indemnity, Section 35." [Emphasis supplied.]
Appellant's Point 2 fails upon the same fallacious premise as did that taken in Point 1 in that it assumes that no primary fault on its part was proven. Having determined, as did the trial court, that the jury in the Solomon trial settled this matter adversely to the contentions of appellant, we now examine the general law of indemnity applicable to joint tort-feasors.
The general rule recognized in this jurisdiction upholds the common law which denies contribution among joint tort-feasors. Like other common law doctrines many exceptions have been engrafted by the authorities upon the initial rule. Judge Wigginton speaking for this Court in Winn-Dixie v. Fellows[1] spotlighted the applicable exception to the general rule and quoted the following which he termed one of its "clearest explanations":
"`One of these exceptions or limitations rests solely upon a difference between the kinds of negligence of two tort-feasors, and comes into play when the active negligence of one tort-feasor and the passive negligence of another tort-feasor combine and proximately cause an injury to a third person. * * * In such case, the passively negligent tort-feasor, who is compelled to pay damages to the injured person on account of the injury, is entitled to indemnity from the actively negligent tort-feasor. * * *'"
This jurisdiction recognized a common law right of indemnity arising out of the contractual relationship of parties in the decisions of Seaboard Air Line Railway Company v. American District Electric Protective Company,[2] and Suwannee Valley Electric Co-operative v. Live Oak, Perry & Gulf Railroad Company.[3] In the Seaboard case an employee was injured by a sagging wire comprising part of the signal system which American District Electric Protective Company owned, operated and maintained on Seaboard's premises pursuant to a contract with Seaboard. The employee recovered against Seaboard which sought indemnification in a complaint against American. The Supreme Court in holding that Seaboard's complaint stated a cause of action for indemnity said:
"* * * [W]here although both parties are at fault and both liable to the person injured, such as an employee of one of them, yet they are not in pari delicto as to each other, as where the injury has resulted from a violation of the duty which one owes the other, so that as between themselves, the act or omission of the one from whom indemnity is sought is the primary cause of the injury. * * *" [Emphasis supplied.]
A similar result was reached in the Suwannee Electric Co-op case. The Co-op had installed power lines crossing the railroad right of way pursuant to an agreement between the parties which provided that the line would not be lower than 28 feet. The proofs reflected a breach of the agreement in that the subject line was only 26 feet and 10 inches high. A railroad employee who was injured when a derrick on a flat car struck the power line recovered from the *215 railroad upon a suit alleging its failure to furnish him with a safe place to work in that the energized electric wiring was maintained lower than good practice permitted. The Supreme Court in affirming the railroad's subsequent indemnity judgment, held that the Electric Company breached its agreement by not properly maintaining the height of its electric line, and by reason of such conduct was required to indemnify the railroad company for the damages it had suffered.
Thus, the foregoing cases sustain the actions of the trial judge in holding that indemnity may be recovered between two joint tort-feasors where one has breached an agreement with the other and such breach constituted the proximate cause of the injury.
Appellant insists that in the Seaboard and Co-op cases no question existed as to the cause of the injury or who was responsible for that cause, but in the instant case, the cause of injury rested wholly on speculation. Such position would be well taken by appellant if it had defended Mrs. Solomon's case and the jury had agreed with it. However, appellant chose to sit idly by and allow Mrs. Solomon to prosecute her cause to a successful conclusion against Penney on the theory of negligence in the maintenance of the escalator. The trial upon that theory resulted in a verdict for Mrs. Solomon who recovered judgment by reason of the negligent conduct of the party responsible for maintaining the mechanical contraption. By contract it is unrefuted that appellant had assumed this responsibility and by law it is responsible for its negligence. The time for appellant to have raised its objections to the sufficiency of the proof of negligence in the maintenance of the escalator was at the time of the Solomon trial, not in this action.
Finally, appellant insists that the question of its negligence is open for litigation in the instant cause and cites Hay v. Hildreth[4] as its authority for this position. In the Hay suit Hildreth recovered a judgment against Central Truck Lines for damages incurred in a motor vehicle accident due to the negligence of its driver, Hay. In a later suit instituted by Mrs. Hay against Hildreth a summary judgment was entered in favor of Hildreth on the grounds that Mrs. Hay was bound by the determination in the first case finding the sole proximate cause of the accident to be the negligence of her deceased husband. On appeal this Court reversed the summary judgment because Mrs. Hay was not a party to the first suit nor a privy to the first action and had no interest in the outcome. Such a principle of law is readily distinguished from the instant situation in that Mrs. Hay had a separate and distinct cause of action than that existent in the prior suit between her deceased husband's employer and Hildreth. No privity existed between Mrs. Hay and Central, and, therefore, Central could not under any theory of law litigate Mrs. Hay's cause of action.
Here, the Solomon suit was filed solely upon the theory of negligence in the maintenance of the escalator mechanism; the owner, Penney, immediately gave notice to its indemnitor Westinghouse of the cause of action and requested it to defend that which it had agreed to indemnify, that is, any damages resulting from its negligent maintenance of the escalator.
The proposition advanced by Westinghouse, that the judgment in the Solomon case is not binding upon it, is primarily founded upon the following position: Westinghouse as indemnitor can stand idly by and allow Penney to defend the case brought upon the theory that Westinghouse was negligent in the performance of its contract; if Penney is successful well and good; if Penney is not successful, then Westinghouse can again litigate the identical question in a suit brought by Penney seeking to require Westinghouse to live up *216 to its contract as it originally agreed to do. Consequently, Westinghouse could avail itself of the opportunity to have the identical question litigated in two separate causes of action. Such a position is illogical and does not comport with the simple requirements of law.
We conclude that the judgment is decisive against Westinghouse in the instant cause. The rationale of the Seaboard Air Line Ry. Company v. American and Suwannee Valley Co-op cases support such a conclusion. Applicable to the instant cause is the theory of estoppel stated by the Supreme Court in Columbia Casualty Company v. Hare,[5] viz:
"This case presents a question of first impression in this state. The authorities are in conflict, but we think that the better rule is that estoppel should apply in such cases. To hold otherwise would mean that the surety company, when being notified of an injury and of a suit pending in which the declaration clearly charged liability against the insured and in which the pleadings presented for determination the question as to whether or not the claim is such as to come within the contract of indemnity in favor of the named defendant, may refuse to defend that suit and stand by while that issue is definitely presented and tried, and then, upon judgment being entered against the defendant, and the defendant being found unable to respond in damages, and execution being returned nulla bona, may again, when the plaintiff seeks to recover in the right of the insured under the terms of the policy from the surety company, present the same issues, which have been once tried and determined, for another trial and determination in the same court.
* * * * * *
"* * * The contention is, and we so hold, that the surety company is estopped to deny liability in face of the judgment rendered in a suit of which it had notice and which it refused to defend when the pleadings and judgment in that case show that the defense interposed therein was the same defense which the surety company now attempts to set up in the garnishment proceedings, and which defense, if successfully maintained in the main suit, would have precluded the judgment against the insured."
and as reiterated by this Court in Wright v. Fidelity & Casualty Co.,[6] viz:
"* * * [T]he generally accepted rule of law that where an indemnitor has notice of a suit against his indemnitee, and is afforded an opportunity to appear and defend, a judgment therein rendered against the indemnitee, if without fraud or collusion, is conclusive against the indemnitor as to all material questions therein determined. * * *"
Legal theories and mental manipulations do not alter the fact that Westinghouse is estopped from denying its negligence and the judgment in the initial suit brought by Mrs. Solomon. The summary judgment is
Affirmed.
STURGIS, C.J., and WIGGINTON, J., concur.
NOTES
[1] Winn-Dixie Stores, Inc. v. Fellows, 153 So.2d 45, 49 (Fla.App.1st, 1963).
[2] Seaboard Air Line Ry. Co. v. American District Electric Protective Co., 106 Fla. 330, 143 So. 316 (1932).
[3] Suwannee Valley Electric Co-op v. Live Oak, Perry & Gulf R. Co., 73 So.2d 820 (Fla. 1954).
[4] Hay v. Hildreth, 125 So.2d 772 (Fla.App. 1st, 1961).
[5] Columbia Casualty Company v. Hare, 116 Fla. 29, 156 So. 370, 373, 377 (1934).
[6] Wright v. Fidelity & Casualty Co. of N.Y., 139 So.2d 913, 915 (Fla.App.1st, 1962).