374 So.2d 487 (1979)
CHARLES POE MASONRY, INC., et al., Petitioners/Cross-Respondents,
v.
SPRING LOCK SCAFFOLDING RENTAL EQUIPMENT COMPANY et al., Respondents/Cross-Petitioners.
No. 54349.
Supreme Court of Florida.
July 5, 1979.
Rehearing Denied September 28, 1979.
*488 Edward A. Perse of Horton, Perse & Ginsberg and P.J. Carroll & Associates, and Alan R. Dakan of High, Stack, Lazenby & Bender, Miami, for petitioners/cross-respondents.
Gary E. Garbis of Virgin, Whittle, Garbis & Gilmour, Miami, for respondents/cross-petitioners.
SUNDBERG, Justice.
This cause is before us on petition and cross-petition for writ of certiorari to review a decision of the District Court of Appeal, Third District, reported at 358 So.2d 84, which allegedly misapplied Leonard L. Farber Co. v. Jaksch, 335 So.2d 847 (Fla. 4th DCA 1976). The issue is whether respondent and cross-petitioner Spring Lock is entitled to indemnity from petitioner and cross-respondent Charles Poe Masonry, Inc. under either a common law or contractual theory. We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
Arthur Lott suffered serious injury when he fell from a scaffold on a construction site. He filed an action for damages against the manufacturer of the scaffold, Spring Lock, and its insurer. The scaffold was leased by Spring Lock to Poe, which assembled and used it as subcontractor on the construction project. In the lease, "Poe undertook to maintain and use the equipment in a safe and proper manner, and to assume all responsibility for claims arising out of the erection, maintenance, use or possession of the equipment, and agreed to hold Spring Lock harmless from all such claims."[1]Spring Lock Scaffolding Rental Equipment Co. v. Charles Poe Masonry, Inc., 358 So.2d 84, 85 (Fla. 3d DCA 1978). Miller & Solomon Construction Company was the general contractor on the project and Lott's employer.
Lott's action against Spring Lock sought recovery on three grounds; negligence, breach of implied warranty and strict liability. Spring lock filed a third-party complaint against its lessee Poe for common law and contractual indemnity, and against the general contractor and property owners for common law indemnity. Lott and Spring Lock entered into a Mary Carter agreement which fixed a $300,000 liability limit. The court granted the third-party defendants' motions for summary judgment.
The district court, relying on Stuart v. Hertz Corp., 351 So.2d 703 (Fla. 1977), held that Spring Lock was not entitled to common law indemnity since Lott's claim against respondent was based on negligence or breach of warranty. On the contractual indemnity issue, the court held that if upon trial it should be found that the injury was caused by the joint negligence of Spring Lock and Poe, Spring Lock would be entitled to indemnity from Poe on the basis of their indemnity agreement. Accordingly, the district court affirmed the summary judgment as to all third-party defendants on the issue of common law indemnity, but reversed as to Poe on the issue of contractual indemnity.
Petitioner maintains that Spring Lock cannot recover under either theory of indemnity. *489 We agree. Common law indemnity is unavailable for the reasons expressed in our companion decision filed today, Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla. 1979).
With respect to the possibility of contractual indemnity, we take note that contracts of indemnification which attempt to indemnify a party against its own wrongful acts are viewed with disfavor in Florida. Florida Power & Light Co. v. Elmore, 189 So.2d 522 (Fla. 3d DCA 1966); Nat Harrison Associates, Inc. v. Florida Power & Light Co., 162 So.2d 298 (Fla. 3d DCA 1964). Such contracts will be enforced only if they express an intent to indemnify against the indemnitee's own wrongful acts in clear and unequivocal terms. University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507 (Fla. 1973).
The lease between Spring Lock and Poe provided that:
2. The LESSEE shall at all times and at his own expense keep the leased equipment in good, safe and efficient working order, repair and condition and shall not permit anyone to injure, deface or remove it or any part thereof. LESSEE agrees to erect, maintain and use said equipment in a safe and proper manner and in conformity with all laws and ordinances pertaining thereto and in accordance with COMPANY safety rules and regulations. The COMPANY shall have no responsibility, direction or control over the manner of erection, maintenance, use or operation of said equipment by the LESSEE. The LESSEE assumes all responsibility for claims asserted by any person whatever growing out of the erection and maintenance, use or possession of said equipment, and agrees to hold the COMPANY harmless from all such claims. LESSEE agrees that use of the leased equipment shall be construed as an absolute acknowledgment by LESSEE that when delivered to LESSEE by COMPANY the equipment was in good order and repair, was properly erected and was in all respects adequate, sufficient and proper for the purposes for which it was intended. [Emphasis supplied.]
The underscored provision employs exactly the sort of "general terms" which we held in University Plaza do not disclose an intention to indemnify for consequences arising from the wrongful acts of the indemnitee.[2] The language of the lease agreement demonstrates nothing more than an undertaking by Poe to hold Spring Lock harmless from any vicarious liability which might result from Poe's erection, maintenance or use of the scaffold. It does not envision indemnity for Spring Lock's affirmative misconduct, whether in connection with design and manufacture or erection, maintenance and use of the scaffold. Compare University Plaza with Joseph L. Rozier Machinery Co. v. Nilo Barge Line, Inc., 318 So.2d 557 (Fla. 2d DCA 1975).
Leonard L. Farber Co. v. Jaksch is readily distinguishable from this case. There the lease provided that "Lessee shall indemnify LESSOR and save it harmless from suits ... occasioned wholly or in part by any act or omission of Lessee ... ." 335 So.2d at 847-48 (emphasis supplied). The district court correctly determined that the "in part" language above manifested lessee's clear and unequivocal intent to indemnify lessor in cases where the lessee and lessor are found to be jointly at fault. The lease here under review contains no such explicit provision, and thus the district court erred in relying on Farber to reach its decision.
We are not unmindful of the fact that the majority in University Plaza limited its holding to instances where liability is based solely on the fault of the indemnitee. However, the public policy underlying that decision applies with equal force here, that is, to instances where the indemnitor and indemnitee are jointly liable. Under classical principles of indemnity, courts of law rightfully frown upon the underwriting of *490 wrongful conduct, whether it stands alone or is accompanied by other wrongful acts. Stuart v. Hertz Corp. Hence we extend the holding in University Plaza to cases where the indemnitor and indemnitee are jointly liable.
Accordingly, the writ of certiorari is granted, the decision of the District Court of Appeal, Third District, is approved in part and quashed in part, and the cause is remanded to the district court with instructions to reinstate the judgment of the trial court.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.
HATCHETT, J., dissents.
NOTES
[1] The indemnity agreement is set out in full later in this opinion.
[2] In University Plaza, tenant agreed to indemnify landlord "from and against any and all claims for any personal injury or loss of life in and about the demised premises." 272 So.2d 507, 508-09 (Fla. 1973).