853 So.2d 1072 (2003)
CAMP, DRESSER & McKEE, INC., et al., Appellants,
v.
PAUL N. HOWARD COMPANY, et al., Appellees.
No. 5D01-2539.
District Court of Appeal of Florida, Fifth District.
June 13, 2003.
Rehearing Denied September 10, 2003.
*1074 James D. Kisio, of Irby G. Pugh, P.A., Orlando, and William H. Selde, of Sodoro, Daly & Sodoro, P.C., Omaha, Nebraska, for Appellants.
Michael M. Bell, of Bell, Leeper & Roper, P.A., Orlando, for Appellees Paul N. Howard Company, INA of Texas, Pacific Employers Insurance Company, INA Insurance Company of Illinois, and Atlantic Employers Insurance Company.
H. Gregory McNeill, of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for Appellee Insurance Company of North America.
GRIFFIN, J.
Camp, Dresser & McKee, Inc., and its insurers, Imperial Casualty & Indemnity Company and International Insurance Company [collectively "CDM"] appeal a summary final judgment entered in favor of Paul N. Howard Company ["Howard"], Insurance Company of North America ["INA"] and their insurers, INA of Texas, Pacific Employers Insurance Co., INA Insurance Company of Illinois, and Atlantic Employers Insurance Company in the underlying *1075 contractual indemnity action. We reverse.

Background
When Orange County ["the County"] undertook to construct the Southwest Orange County Water Conservation Effluent Transmission Main ["the project"] in 1984, it hired CDM to provide the necessary engineering work and Howard as its contractor for the project. Howard hired Affholder, Inc., and Kern Affholder ["Affholder"] to construct underground tunnels necessary for the project. Affholder in turn contracted with Ed Waters & Sons Contracting Company, Inc. ["Waters"] to construct steel reinforced pits necessary to set up Affholder's tunneling apparatus. Construction of the pits required the use of sheet piling for reinforcement. As Robert Eiler, an employee of Waters, was unhooking the sheet piling from a crane, the crane got too close to a power line and electricity arced from an overhead power line to the crane and from the crane to Mr. Eiler. Mr. Eiler received an electrical shock which caused severe and permanent brain damage.
Suit was instituted by Mr. Eiler's guardian against CDM, Howard, and Affholder, as well as other parties connected with the project. Summary judgments, which were subsequently affirmed by this court, were entered in favor of Howard and Affholder based on their immunity from liability for Mr. Eiler's claims under Florida's Workers' Compensation Act. In the end, only CDM was left as a defendant in the Eiler suit.
On January 27, 1993, CDM contacted Howard by letter informing them of the current status of the suit and the scheduled settlement mediation set for February 12, 1993, and asserted a right of indemnification from Howard under the project's construction contract documents. CDM explained:
As discovery has progressed in this matter it has become increasingly apparent that Mr. Eiler was injured as the sole result of the negligence of your subcontractor or sub-subcontractor on this project. As a result, Camp Dresser & McKee, Inc. will look to your firm to indemnify it against any recovery had by the Plaintiff against Camp Dresser & McKee, Inc. in this matter.
The letter asked that a representative of Howard attend the mediation and explained that if Howard failed to attend, CDM would "hear no objection" as to the reasonableness of any settlement it might reach. On February 9, 1993, CDM's counsel wrote an even more extensive letter explaining that Eiler's injuries were not due to CDM's design of the project and that CDM was convinced it was entitled to indemnity from Howard notwithstanding the fact that Orange County had earlier asserted a similar indemnification claim under the same contract provisions that had failed in court. Howard made no response to these and subsequent demands. In the case below, Howard filed an affidavit claiming it did not respond to CDM because it considered CDM's notice to be "inadequate" and because, having obtained a summary judgment in its favor on Orange County's claim for indemnity based on the same indemnification clause, it believed that it had no duty to CDM under the indemnification agreement.
After Howard and INA failed to respond to CDM's demand, CDM eventually settled Mr. Eiler's claim for the sum of $3.55 million dollars. CDM then filed a complaint against Howard, INA, and their insurers seeking contractual indemnity.
The indemnity action was based on the following indemnity provisions contained in *1076 the County's agreement with Howard:[1]
Indemnification:
6.30. To the fullest extent permitted by law, CONTRACTOR [Howard] shall indemnify and hold harmless OWNER [Orange County] and ENGINEER [CDM] and their agents and employees from and against all claims, damages, losses, and expenses including but not limited to attorneys' fees arising out of or resulting from the performance of the work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death ... and (b) is caused in whole or part by any negligent act or omission of CONTRACTOR [Howard], any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.
Eiler v. Camp, Dresser & McKee, Inc., 594 So.2d 753 (Fla. 5th DCA 1992); Eiler v. Camp, Dresser & McKee, Inc., 591 So.2d 641 (Fla. 5th DCA 1992). There was also a provision limiting the scope of the indemnification.
6.32 The obligations of CONTRACTOR [Howard] under paragraph 6.30 shall not extend to the liability of ENGINEER [CDM], his agents or employees arising out of the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications.
INA, as Howard's surety, was named as a party to the indemnity action based on a performance bond INA issued for the project which included an indemnity clause whereby INA was to indemnify the County and CDM as follows:
[INA] shall indemnify and save harmless the said Owner [Orange County] and the Engineer [CDM] and his agents against payments of any and all damages that may happen to persons or property by reason of the excavations or embankments, obstructions and all other work in the streets or alleys or in the site in connection with the said work, or arising out of any act, neglect or omission of said principal [Howard], his or its agents, suppliers, subcontractors or employees with relation to said work....
The summary final judgment presently on appeal is the second judgment rendered in favor of Howard and INA and against CDM. Earlier in the proceedings, the trial court had granted summary judgment in favor of Howard and INA on the ground that section 725.06, Florida Statutes (1983), precluded CDM's claim absent specific consideration from CDM; that there was no special relationship by which CDM was vicariously liable for the negligence of Howard or its subcontractors; and that the exclusive remedy provision of the Worker's Compensation Act barred the action because Howard was Mr. Eiler's statutory employer. CDM subsequently appealed and this court reversed. We held that the action was not barred by the exclusive remedy provision of the Worker's Compensation Act; that CDM could seek indemnity as a third party beneficiary to the contract where the County gave consideration in exchange for the agreement to indemnify the County and CDM; and that in attempting to recover under a contractual indemnity clause CDM was not required to establish a special relationship between itself and Howard that would make its liability vicarious, constructive, derivative or technical. Camp Dresser & McKee, Inc. v. Paul N. Howard Co., 721 *1077 So.2d 1254, 1257 (Fla. 5th DCA 1998) ["Camp Dresser I."] We remanded the case to the trial court because the issue of CDM's negligence appeared to remain unresolved.
On remand, the trial court resisted Howard's impassioned argument that our opinion in Camp Dresser I was just plain wrong[2] and was based on a misreading of the indemnity agreement. Notwithstanding our opinion in Camp Dresser I, Howard continued to press the view that CDM could have no right to indemnity under paragraph 6.30 of the contract because CDM had been sued only for CDM's own negligence, not Howard's, Waters' or Affholder's negligence. Howard's unwavering view then and now is that unless CDM had been sued on a theory of vicarious liability for Howard's negligence, both common law and contractual indemnity were simply not available to CDM.
Howard is wrong. As we tried to explain in Camp Dresser I, common law indemnity is an equitable remedy that arises out of obligations imposed through special relationships, but contractual indemnity is not concerned with "special relationships" or vicarious, constructive, derivative or technical liability; it is concerned with the express terms of the agreement to indemnify. See Metropolitan Dade County v. Florida Aviation Fueling Co., 578 So.2d 296 (Fla. 3d DCA 1991); Grain Dealers Mut. Ins. Co. v. Quarrier, 175 So.2d 83 (Fla. 1st DCA 1965). In cases involving contractual indemnity, the terms of the agreement will determine whether the indemnitor is obligated to reimburse the indemnitee for a particular claim. See Dade County School Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999); Arison v. Cobb Partners, Ltd., 807 So.2d 101 (Fla. 3d DCA 2002); ICA Const. Corp. v. Fredrick R. Harris, Inc., 701 So.2d 113, 115 (Fla. 3d DCA 1997).
Howard is also wrong in its contention that under no reading of paragraph 6.30 could it be said that Howard is contractually bound to provide indemnity to CDM for claims alleging CDM's own negligence. Certainly contracts purporting to indemnify a party against its own negligence will only be enforced if they clearly express such an intent, Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla. 1979); Comptech Int'l, Inc. v. Milam Commerce Park, Ltd., 711 So.2d 1255 (Fla. 3d DCA 1998), and a general provision indemnifying the indemnitee "against any and all claims," standing alone, is not sufficient. University Plaza Shopping Ctr. v. Stewart, 272 So.2d 507, 510-11 (Fla.1973); see also Ivey Plants, Inc. v. FMC Corp., 282 So.2d 205 (Fla. 4th DCA 1973); see also Cox Cable Corp. v. Gulf Power Co., 591 So.2d 627 (Fla.1992). However, paragraph 6.30 also specifically provides that Howard shall indemnify CDM for any claim "regardless of whether or not it is caused in part by a party indemnified hereunder."
The indemnity provision at issue in paragraph 6.30 is almost verbatim the indemnification provision contained in the American Institute of Architects (AIA) Standard Document A201 for General Conditions of the Contract for Construction. The United States Supreme Court has cited this language as being a paradigm of clarity in shifting the risk of a negligent indemnitee's loss to the indemnitor. United States v. Seckinger, 397 U.S. 203, 212, 90 S.Ct. 880, 25 L.Ed.2d 224, n. 17 (1970). The AIA's own commentary describes the intent of this provision as follows:

*1078 The contractor's obligation to indemnify is triggered by an act or omission of the contractor or one of the contractor's agents or employees, and covers the indemnitee's loss only to the extent that it was caused by such act or omission. This is comparative fault language: for example, if the indemnitee and all other third parties are found to be 20 percent responsible, the contractor's obligation to indemnify would extend to 80 percent of the loss.
American Institute of Architects, "Commentary on AIA Document A201-1997" ¶ 3.18 at 32
We conclude that this provision clearly expresses the parties' intent that CDM may be indemnified by Howard even if CDM is sued for its own wrongful conduct. See Gulfstream Park Racing Ass'n v. Gold Spur Stable, Inc., 820 So.2d 957 (Fla. 4th DCA 2002)(citing Marino v. Weiner, 415 So.2d 149 (Fla. 4th DCA 1982), Leonard L. Farber Co. v. Jaksch, 335 So.2d 847 (Fla. 4th DCA 1976)), review denied, 842 So.2d 845 (Fla.2003). Certainly, when reading paragraphs 6.30 and 6.32 together, it is even more clear that the intent of the parties was to indemnify CDM for any claim arising out of negligence of Howard or its subcontractors even if CDM was also negligent. The document makes no sense if paragraph 6.30 has the meaning Howard and INA ascribe to it.

The Current Appeal
After an initial false start, the trial court determined that there were two issues to be tried as predicates to CDM's entitlement to indemnity: (1) whether Howard, Affholder, and/or Waters were negligent, an express requirement for application of section 6.30, and (2) whether CDM beached any of its design related duties specifically referenced in paragraph 6.32, because CDM could not claim indemnity under 6.30 if the indemnity claim was based on such acts.
The jury returned a verdict finding that Howard (30%), Affholder (10%), and Waters (60%) were 100% negligent and were the legal cause of the injury to Richard Eiler. The jury also found that CDM was not negligent in the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications. Having succeeded completely at trial, CDM may have imagined it was on its way to obtaining a judgment in its favor.
Undeterred, INA and Howard filed further motions for summary judgment on the issue of indemnity, yet again reiterating its position that because CDM had been sued only for its negligence and not acts of Howard, CDM could never be indemnified by Howard:
"What is missing from CDM's argument is the necessary ingredient that it reached a settlement with Richard Eiler based on the negligence of Howard and its subcontractors for which CDM [is] vicariously liable."[3]
The trial court granted summary judgment in favor of INA and Howard, but the court did so for a reason largely unrelated to the issues raised at trial or the summary judgment motions. The court explained its reason for ruling against CDM as follows:
The record clearly shows there was potential liability for CDM to be found negligent under the duties set out in Paragraph 6.32. However, the court finds the record as it existed at the time of the settlement and at the present time fails to show any fact to support a claim that CDM had a reasonable basis to believe that it could be found negligent *1079 for acts done or not done outside the duties set out in Paragraph 6.32.
Since Paragraph 6.32 duties were excepted from the indemnity provision, CDM did not sustain or suffer any damages because of CDM's payment of the settlement monies for which it would be entitled to be contractually indemnified by Howard. The settlement monies were, strictly speaking, paid due to its potential liability arising out of a violation of its duties as set out in paragraph 6.32 and not because of any negligent act or omission of Howard or its subcontractors or of any violations of duties outside of Paragraph 6.32's penumbra; therefore, they would not be covered by the indemnity provisions of the general contract.
The trial court entered its summary final judgment in accordance with this order, which CDM now challenges on appeal. Although the appealed order is a perceptive and accurate analysis of the controlling legal principles, we believe that the court's ultimate conclusion is premature and not supported by the record. For that reason, we reverse.
The general rule of indemnification is that an indemnitor who has notice of the suit filed against the indemnitee by the injured party and who is afforded an opportunity to appear and defend it is bound by a judgment rendered against the indemnitee as to all material questions determined by the judgment. Hull & Co. v. McGetrick, 414 So.2d 243, 244 (Fla. 3d DCA 1982); Hoskins v. Midland Ins. Co., 395 So.2d 1159 (Fla. 3d DCA 1981); MacArthur v. Gaines, 286 So.2d 608 (Fla. 3d DCA 1973); Westinghouse Elec. Corp. v. J.C. Penney Co., 166 So.2d 211 (Fla. 1st DCA 1964). The judgment, however, must be rendered without fraud or collusion. Florida courts often refer to the effect of this rule as "vouching in" the indemnitor. Hull.
Premised on the concepts of estoppel and res judicata, the judgment rendered in the main action establishes for purposes of the indemnity action all of the material facts litigated in the main action. See Hull, 414 So.2d at 244 ("It is well settled that a judgment rendered against an indemnitee ... is conclusive for res judicata or estoppel by judgment purposes against a potential indemnitor ... but only upon the condition that the indemnitor has been given timely notice and an opportunity to appear and defend the action."); Hoskins, 395 So.2d 1159; Westinghouse, 166 So.2d 211.
The vouching in rule also applies to settlements. See Continental Cas. Co. v. Godur, 476 So.2d 242 (Fla. 3d DCA 1985); Post Houses, Inc. v. Fireman's Fund Ins. Co., 469 So.2d 863 (Fla. 1st DCA 1985); Atlantic Coast Dev. Corp. v. Napoleon Steel Contractors, 385 So.2d 676, 681 (Fla. 3d DCA 1980). In Godur, the court set forth the general rule:
Ms. Godur, as a defendant in the primary action and a cross-defendant to Continental's cross-claim, was on notice of (and obviously had the opportunity to defend) both the underlying action and the indemnity claim long before the settlement took place. In these circumstancesin the admitted absence of any claim of fraud or collusionit is established Florida law that she is conclusively bound by the terms of the subsequent settlement agreement to reimburse Continental for the amounts expended.
476 So.2d at 244. Although variously described in the cases, courts generally agree that a party seeking indemnification must establish that the settlement was made based on his potential liability to the plaintiff. A showing of "potential liability" is required because the indemnitee must not *1080 be a mere volunteer who has settled the underlying claim when there was no exposure to legal liability that obligated him or her to do so. See Arison, 807 So.2d 101; Dade County School Bd., 731 So.2d 638. Only if the indemnitor is not given notice and an opportunity to assume responsibility for the claim must the settling indemnitee show that it was actually liable to the plaintiff.
The rule is the same in a case such as this where theories both within and without the indemnity agreement are asserted against the indemnitee and the indemnitor does not assume the defense of the claims within the contract's coverage. Heckart v. Viking Exploration, Inc., 673 F.2d 309, 313 (10th Cir.1982). The indemnitee may settle for a reasonable amount and then recover that amount from the indemnitor by showing it was not liable on any theory outside the indemnity agreement and was potentially liable on a theory covered by the agreement. Id.
The question whether an indemnitee must establish "actual liability" to the plaintiff or only "potential liability" based upon notice given to the indemnitor is a question for the court to decide. See In re Cooper Mfg. Corp., 131 F.Supp.2d 1238 (N.D.Okla.2001). The trial court in this case apparently concluded that Howard had adequate notice of the claim because the court applied the "potential liability" test. This conclusion that Howard received adequate notice is supported by the record. The record reveals that Howard was well aware of the underlying suit filed against CDM by Eiler; Howard had been a party to the suit until extricating itself on summary judgment based on worker's compensation immunity. Moreover, CDM timely and repeatedly notified Howard of the impending settlement mediation date and its intent to initiate settlement discussions with Eiler, inviting Howard's participation. Under the circumstances of this case, three weeks' notice of the settlement mediation was adequate and did not prejudice Howard. We agree that, for purposes of applying the vouching in rule, Howard was given adequate sufficient notice of the suit.[4]Godur; see also Hull.
Where the trial court erred was in concluding that summary judgment in Howard's favor was appropriate because there was no potential liability on the part of CDM for any acts other than breach of those duties set out in paragraph 6.32 which were specifically excluded from the indemnity provisions of the agreement.
The allegations of the complaint filed against CDM by Eiler, show that CDM was being sued for diverse negligent acts or omissions, including:
25. [CDM] negligently failed to adequately design the Project and supervise the work in that it knew or should have know that in carrying out its plans, it created an unreasonably dangerous condition because the work required to be performed at the injury site necessitated the use of a crane in, around, and near uninsulated power lines. Nevertheless, [CDM] negligently failed until after the accident to correct the plans or take other appropriate action to protect workmen at the site.
26. [CDM] negligently failed to prepare plans which complied with the applicable professional standards of engineers in that the plans provided for the *1081 work which was performed by plaintiff Richard A. Eiler and others to be performed in an unreasonably dangerous location without proper warning or protection. Further, the plans of [CDM] failed to adequately provide the reasonable means by which the work could be performed safely in light of existing conditions and were defective in that the means provided on the design documents to perform the work safely were impossible to carry out at the work site.
27. [CDM] failed to adequately supervise the Project in that it required work to be performed at an extremely dangerous location, more likely than not, to cause an injury to the plaintiff Richard A. Eiler; failed to notify FPC [Florida Power Company, the company who owned the power line that transferred the current to the crane] of impending work to be done with a crane in, around, and near its power lines; failed to adequately or sufficiently warn the plaintiff and other workers of the dangerous condition; and failed to use proper means that it knew or should have known would negate the danger from uninsulated power lines to the plaintiff Richard A. Eiler as he performed his work on the ground below.

28. The failure of [CDM] to adequately supervise the Project and its defective design is the direct and proximate cause of the injuries, damages, and losses to the plaintiff Richard A. Eiler, described in paragraph 18.
[emphasis supplied.] Within these allegations are claims of breaches of duties covered in paragraph 6.32 which are excluded from the indemnity provisions of the agreement. Notably, however, there are also allegations of negligence by CDM which are not excluded from the indemnity provisions of the agreement by paragraph 6.32.
Howard consistently and aggressively contended throughout the proceedings that CDM did have significant liability exposure to Eiler and that there was ample evidence in the underlying case that CDM was actively negligent. In support, Howard often referred to the memorandum of law filed by Eiler in opposition to CDM's second motion for summary judgment to demonstrate how plain CDM's own negligence was. Howard, of course, so readily took the position that CDM, its indemnitee, was negligent because of its mistaken view that, so long as CDM was sued for its own negligence and not for any vicarious liability for Howard's negligence, Howard was safe from liability under the contractual indemnity in paragraph 6.30.
The Eiler memorandum in opposition to CDM's motion for summary judgment often referred to by Howard laid out in detail Eiler's three main theories of liability against CDM: (1) negligent design; (2) negligent supervision; and (3) section 324A of the Restatement (Second) of Torts.
As to the theory of negligent supervision, Eiler asserted in part:
CDM's liability for defects in its design of the project, to the extent that they posed an unreasonable risk of danger to plaintiff Eiler, must be considered separately from potential liability associated with CDM's negligent supervision of the project.

. . .
Moore v. P.R.C. Engineering, Inc., 565 So.2d 817 (Fla. 4th DCA 1990) is dispositive on the issue of supervisory liability. In that case, Moore was injured in the collapse of a toll facility being constructed by a state agency and Moore filed suit against the supervisory engineers who had agreed to act as the agency's general consultant for the project and be *1082 responsible for monitoring, inspection, testing and observation and assurance of the quality of the work. After the trial court granted summary judgment in favor of the engineers on the basis of its finding that the sole responsibility for assuring safety on the job rested with the general contractor, the Fourth District reversed and found that the engineering and inspection duties assumed by the engineer encompassed a duty to ensure that the construction proceeded safely and that material issues of fact existed as to whether or not the engineers breached the duties imposed upon them. 565 So.2d at 820.
Eiler also relied on Restatement (Second) of Torts, section 324A, previously applied by the Fourth District Court of Appeal in Garrison Retirement Home Corp. v. Hancock, 484 So.2d 1257 (Fla. 4th DCA 1985):
One who undertakes, gratitutiously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm....
484 So.2d at 1261.
Eiler argued:
"The language of the contract between Orange County and CDM called for CDM to approve change orders (page numbers omitted) to `review field conditions' and `identify and resolve potential short-range problems.'.... "In fact, CDM reserved the right to modify the location of the pipeline in order to avoid interference with existing structures. In light of these contractual duties and the readily foreseeable prospect of electrocution of workers on the project in the event that ineffective changes in the location of the pit in question were approved by CDM, issues of fact are presented as to CDM's failure to perform a reasonably careful inspection of the site and evaluation of the proposed change in the pit location before approving the change."
For its part, CDM points out that before it elected to settle, the trial court had denied two motions for summary judgment filed by CDM in an attempt to extricate itself from Eiler's claim. CDM's second motion for summary judgment was opposed not only by the memorandum but was supported by the affidavits of three engineers who concluded that CDM's negligent actions caused Eiler's injuries.
The trial court refused CDM indemnity because it lacked "potential liability" for any claim other than one encompassed by paragraph 6.32. The court said: the "record as it existed at the time of settlement and at the present time" failed to show "any facts to support a claim that CDM had a reasonable basis to believe it could be found negligent for acts done or not done outside of the exceptions in paragraph 6.32." However, the record of the proceedings in the Eiler case, as described above, is some evidence of a reasonable basis for CDM to believe that it had exposure for claims outside paragraph 6.32. It is difficult to draw a bright line between the alleged acts of negligence that are excluded from indemnity in section 6.32 and those that are not excluded, but that uncertainty militates in favor of CDM, not against it. Further, we now know that the jury below, when presented with all the evidence of CDM's negligence, determined that CDM was not guilty of negligent design.
Doubt about the trial court's conclusion is heightened because the trial court's ruling *1083 on this point is not based on what the court told the parties they were to litigate. The parties only litigated the paragraph 6.30 and 6.32 issues: Were Howard and the subcontractors negligent and was CDM guilty of negligent design? Pretrial, the trial court had even (correctly) rejected the suggestion of asking the jury whether CDM could be liable for negligent supervision because at the time the court expressed the view that the only issues that mattered were whether Howard and the subs were negligent, which would trigger indemnity, and whether CDM was liable for negligent design, which would nullify the right to indemnity. Nothing identifies as an issue CDM's "potential liability" or "reasonable basis to believe" it could be found liable to Eiler for negligent supervision of the work as alleged in Eiler's complaint.
It is also unclear what criteria the trial court was using to evaluate CDM's potential for liability to Eiler. Florida law is a bit fuzzy on the question of "potential liability" in the contractual indemnity context. Many Florida cases suggest that when the indemnitor has had notice and an opportunity to defend, but has refused or failed to do so, the indemnitor may not litigate the reasonableness of the indemnitee's decision to settle unless fraud or collusion with the plaintiff is demonstrated.
Other courts have used a variety of words to illustrate "potential liability" in the context of the settlement of a claim subject to contractual indemnity. In Chicago Title Insurance Co. v. IGM Exeter Associates Ltd. Partnership, 985 F.2d 553 (4th Cir.1993), the Fourth Circuit Court of Appeals in evaluating a "potential liability" issue used terms such as "not frivolous," "reasonable apprehension of liability," "untainted by fraud or collusion." See also Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1217 (5th Cir.1986). In Manley v. AmBase Corp. 121 F.Supp.2d 758 (S.D.N.Y.2000), the court found it sufficient that counsel for the indemnitee, after evaluating the strength of the case, "believed there was a possibility that a substantial judgment would be rendered" against the indemnitee. Other courts speak of reasonableness and good faith. Volkswagen of America, Inc. v. Bob Montgomery, Inc., 1985 WL 2824 n. 4 (E.D.Pa. 1985).
The threshold for "potential liability" is not high, nor should it be. Where notice has been given to the indemnitor and the indemnitor has elected not to act to protect himself, he, in effect, consents to allow the indemnitee to act for him and will not be heard to complain about the outcomeexcept in the very limited circumstance where the indemnitee was not, in fact, at risk, but nevertheless paid money that it would never have owed to the plaintiff. See Burke v. Ripp, 619 F.2d 354, 358 (5th Cir.1980). The cases suggest that the test for "potential liability" may be both subjective and objective, i.e. was the indemnitee at any risk of loss due to the claim and did the indemnitee have reason to believe he was at risk at the time the settlement was entered into? See In re Cooper Mfg. Corp., supra, at 1258.
Courts generally hold that it is for the court to determine whether actual liability or potential liability is the indemnitee's burden, but questions pertaining to whether there was "potential liability" often involve questions of fact. We are not convinced that the issue of CDM's reasonable apprehension of liability for negligent supervision was fully aired below or is so clearly established on the record that we should decide it as a matter of law at this level any more than should the trial judge have done. It is appropriate to remand for further proceedings on this issue.
*1084 If it is determined after taking evidence that CDM paid all or part of the $3.55 million to Eiler based on potential liability for negligence not described in paragraph 6.32, then CDM would be entitled to indemnity for those monies paid to Eiler. We accordingly reverse the summary judgment in favor of Howard and INA and remand for further proceedings, specifically, whether CDM settled the Eiler claim based on a reasonable potential for liability based on negligence unrelated to design, if so, what portion of the payment to Eiler was for such potential liability and what were CDM's recoverable costs and attorney's fees for defending the negligent supervision claim.
REVERSE and REMANDED.
THOMPSON, C.J., and SAWAYA, J., concur.
NOTES
[1] The County paid Howard $1,000 consideration in exchange for this indemnification, and CDM was named a third party beneficiary to the contract.
[2] INA's counsel explained to the trial court that it was "not the Fifth DCA's best day."
[3] Howard's Motion for Summary Judgment, filed June 11, 2001.
[4] We note, in any event, that where the indemnification claim is based on a written contract of indemnification, many courts recognize that a showing of potential liability is all that is required even if notice is not given. Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1216 (5th Cir.1986).