SWANSON, J.
ATC Logistics Corporation (“ATC”) and Southeast Toyota Distributors, LLC (“SET”) were among the named defendants in a personal injury lawsuit filed by Latascha Jackson seeking damages for injuries she sustained on March 5, 2002, while employed as a security guard by Burns International Security Services Corporation. During the course of the litigation, SET filed a third-party complaint against ATC asserting contractual and common law indemnity. Both parties eventually filed cross-motions for summary judgment on the issue of indemnification. The trial court denied ATC’s motion and granted SET’s, concluding as a matter of law that certain languáge contained in the parties’ contract was’ sufficiently unequivocal to require ATC to indemnify SET for SET’s own acts of negligence. We disagree and reverse.
■ On the day of the accident, Jackson was assigned- to- work security at a temporary parking lot leased by SET. The parking lot served as ■ a storage location for SET’s vehicles, and Jackson’s duties included managing the traffic into and out of the lot. ATC contracted with SET to be its primary carrier in Florida for transporting *98 its vehicles. ATC subcontracted its duties to haul SET’s vehicles to Tropical Auto Transport, Inc. (“Tropical”). At the time of the accident, a tractor-trailer owned by Tropical and operated by Tropical’s driver, drove onto the lot near the security gatehouse. A hard cable wire had been placed on the pavement across the entrance and was strung over a concrete barrier wall near the gatehouse. According to undisputed representations-made by counsel at the summary judgment hearing, the cable was partially elevated to a degree that the tractor-trailer snagged it and pulled the wall down onto Jackson, causing, significant injuries to her lower extremities. In her complaint, Jackson alleged that SET was liable, both vicariously and directly, for her injuries because (1) its driver (ATC/Tropical) negligently operated the car carrier; (2) SET negligently designed and assembled an unreasonably dangerous mechanism (the entry gate), which caused Jackson’s injuries; and (3) SET negligently maintained its premises .by using an unreasonably dangerous machine to control ingress and egress to and from its property. Eventually, Jackson settled with ATC and SET for $800,000 in damages, under which agreement ATC and SET were each liable to her for $400,000. SET then sought full indemnification from ATC for its half of the settlement agreement under the provisions of paragraph 9 of the parties’ contract.
Paragraph 9 states in part:
9. INDEMNIFICATION BY CARRIER
(a) ATC shall indemnify and hold harmless SET from and against any and all losses, liabilities, damages, costs, fines, expenses, deficiencies, taxes and. reasonable fees and expenses of counsel and agents, including any costs incurred in enforcing this Agreement, that SET may sustain, suffer or incur arising from (i) Carrier’s failure or alleged failure to comply, in whole or. in part, with any of its obligations hereunder; (ii) any loss of or damage to a Vehicle while loaded onto, transported on or unloaded from a Car. Carrier; (iii) any damage to any property, of SET caused, by the maintenance or operation of any Car Carrier or the loading or unloading of any Car Carrier; (iv) airy claims by any third person with respect to death, injury or property damage caused by the maintenance or operation of any Car Carrier or the loading, transportation or unloading of Vehicles on or from a Car Carrier and (v) any claims resulting from or arising out of injury or déath of any employee, agent of contractor of Carrier including claims alleging that SET failed to provide a safe place to work.
(Emphasis added.) ATC is the defined “Carrier’* in paragraph 1(a) of the contract. ATC filed a motion for summary judgment seeking a determination that the subject indemnification paragraph was legally insufficient to require it to indemnify SET for SET’s own negligence. On April 20, 2012, the trial court denied the motion. Although the order was not made a part of the record, it was read into the transcript at the hearing on SET’s motion for summary judgment. According to the transcript, the trial court denied ATC’s motion because it concluded the language — “in whole or in part” — italicized above in bold in paragraph 9(a)(i), reflects an unequivocal intent of the parties that ATC agreed to indemnify SET for its own negligent acts, especially when paragraph 9(a)(i) is read in conjunction with paragraph 3(c) (defining the duties of the Carrier), under which “[ATC] is required to operate and permit operation of each car carrier only in a careful manner.”
*99 As earlier noted, SET filed its.>own motion for summary judgment seeking to have the trial court declare as a matter of law that “[t]he indemnity provision of the contract completely, and unequivocally indemnifies SET for the damage claimed in the underlying action.” At the same time, ATC filed a motion asking either for a rehearing of the trial court’s order denying its motion for summary judgment, or for the trial court to reconsider ATC’s motion. A hearing was held on the two motions during which counsel for both parties conceded that the only issue before the trial court was the interpretation of the indemnity provision and, therefore, the trial court would need to grant only one or the other of the motions. In short, as a matter of law, SET was either entitled to indemnification for its own acts of misconduct or it was not. On April 15, 2014, the trial court entered its order denying ATC’s motion for rehearing or for reconsideration and granting SET’s motion for summary judgment. In the order, the court reasoned:
ATC agreed to indemnify SET in paragraph 9(a)(i) for ATC’s “failure to comply, in whole or in part, with any of its obligations hereunder.” Three or four sentences later, ATC agreed to the obligation to indemnify for “claims by any third person with respect to ... injury caused by the ... operation of any Car Carrier..., ” This is sufficient to require indemnification for acts involving SET’s own negligence.
(Italics in original). In support of its conclusion, the trial court parenthetically cited to Leonard L. Farber Co. v. Jaksch, 335 So.2d 847 (Fla. 4th DCA 1976). It subsequently entered a summary final judgment in which it held SET should recover irom ATC prejudgment interest in the amount of $174,752.55, as well as the sum of $400,000.00, with interest, until the judgment is paid. This appeal followed..
“Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.” Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Accordingly, our review is de novo. Id. Furthermore, ^interpretation of a contract is a question of law, and an appellate court is not restricted in its review powers from reaching a construction contrary to that of the trial court.” Inter-Active Servs., Inc. v. Heathrow Master Ass’n, 721 So.2d 433, 434 (Fla. 5th DCA 1998) (citing Pullam v. Hercules, Inc., 711 So.2d. 72, 75 (Fla. 1st DCA 1998)).
The sole issue for this Court’s review is whether the provisions of paragraph 9 of the parties’ contract contain words of such legal specificity so as to permit a conclusion as a matter of law that SET may be indemnified against its own affirmative misconduct in the underlying personal injury action. Resolution of this issue is necessarily tempered by the general rule that “contracts of indemnification which attempt to indemnify a party against its own wrongful acts are viewed with disfavor in Florida,” Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla.1979) (citing Univ. Plaza Shopping Ctr., Inc. v. Stewart, 272 So.2d 507 (Fla.1973)).
We begin our analysis with the Florida Supreme Court’s opinion in University Plaza Shopping Center, Inc. v. Stewart, wherein the central issue was whether a contract of indemnity couched in the general terms of “any and all claims” worked to indemnify the indemnitee for damages resulting from the indemnitee’s, sole negligence. 272 So.2d at 509. In that case, University Plaza Shopping Center leased space in its building to a tenant who used the space to operate a barbershop. Dur *100 ing the lease,'a gas-line exploded underneath the barbershop causing fatal injuries to a barber. The barber’s widow sued University Plaza Shopping Center for wrongful death, alleging it, as the landlord, negligently installed and maintained the gas line under the barbershop, which caused the explosion that led to the barber’s fatal injuries. University. Plaza Shopping. Center then instituted a third-party complaint against the tenant and his insurer seeking to impose liability on them based on an indemnity provision, which provided in- pertinent part that the tenant would indemnify and save harmless the landlord from and against any and all claims for damages in and about the demised premises, and against any and all claims for personal injury or loss of life in and about the demised premises. Id. at 508-09. The supreme court noted that “divergent views” on the particular issue existed throughout the United States, but that the basic premise was that an indemnity contract does not indemnify the in-demnitee against losses resulting from the indemnitee’s negligent acts unless such intention is expressed in clear and unequivocal terms. Id. In concluding that the best alternative was to require a specific provision protecting the indemnitee from liability solely caused by his own negligence, the supreme court reasoned that its “basic objective in construing the indemnity provision is to give effect to the intent of the parties involved ...” and that “the use of the general terms ‘indemnify ... against any and all claims’ does not disclose an intention to indemnify for consequences arising solely from the negligence of the indemnitee.” Id. at 511 (emphasis omitted). The supreme court concluded that based on the facts before it, the other alternatives it had considered in construing the indemnity provision imputed an intent to indemnify for liability occasioned by the indemnitee’s sole negligence, which was a “harsh result not necessarily contemplated by the parties nor condoned by this Court.”[1] Id.
Six years later, in Charles Poe Masonry v. Spring Lock Scaffolding Rental Equipment Co., the Florida Supreme Court considered whether the rule announced in University Plaza applied to situations, such as the present one, where the indem-nitee was held jointly liable due to his or her own negligence. 374 So.2d at 489. In that case, an employee of Charles Poe Masonry was injured when he fell from a scaffold on a construction site. The employee filed an action alleging’ the manufacturer of the scaffold, Spring Lock, was negligent, breached the implied warranty, and was strictly liable for his injuries. The scaffold had been leased by Spring Lock to Charles Poe Masonry. The lease agreement provided in pertinent part that the lessee assumed all responsibility for claims asserted by any person whatsoever growing out of the erection and maintenance, use, or possession of the scaffolding equipment, and that the lessee agreed to hold the lessor harmless from such claims. Id. at 488. Thus, Spring Lock filed a third-party’complaint against Charles Poe Masonry for contractual indemnity. Id. In considering whether the provision barred indemnity, the supreme court concluded it employed “exactly the sort of ‘general terms’ which we held in University Plaza do not disclose an intention to indemnify *101 for consequences arising from the 'wrongful acts of the indemnitee” and < that the public policy reasons expressed in University Plaza applied with equal force to instances where the 'indemnitor and indemni-tee were jointly liable. Id. at 489. It warned: “Under classical principles of indemnity, courts of law rightfully frown upon the underwriting of wrongful conduct, whether it stands alone or is accompanied by other wrongful acts.” Id. at 489-90. It also stated that the language of the provision at issue demonstrated “nothing more than an undertaking by [Charles Poe Masonry] to hold Spring Lock harmless from any vicarious liability which might result from [Charles Poe Masonry’s] erection, maintenance or use of the scaffold.” Id. at 489. It went on- to declare that the provision “does not envision indemnity for Spring Lock’s affirmative misconduct, whether in connection with design and manufacture or erection, maintenance and use of the scaffold.” Id. The supreme court reaffirmed these principles thirteen years later in Cox Cable Corp. v. Gulf Power Co., 591 So.2d 627 (Fla.1992) (applying the principles established in University Plaza and Charles Poe Masonry in holding that the district court had erred by applying a less stringent standard to cases involving parties who are jointly liable, and that the language of the provision before it was insufficiently clear and unequivocal).[2]
Charles Poe Masonry is particularly sigr nificant here to the extent the Florida Supreme Court found “readily distinguishable” the indemnity language scrutinized in Leonard L. Farber Co. v. Jaksch, the case cited by the trial court in granting SET’s motion for summary judgment. The supreme court asserted:
[In Farber ] the lease provided that “Lessee shall indemnify LESSOR and save it harmless from suits ... occasioned wholly or in part by any act or omission of-Lessee ....” 335 So.2d at 847-48. (emphasis supplied). The district court correctly determined that the “in part” language above manifested lessee’s clear and unequivocal intent to indemnify lessor in cases where the lessee and lessor are found to be jointly at fault. The leas,e here under review contains no such explicit provision, and thus the district court erred in relying on Farber to reach its decision.
374 So.2d at 489. A more compelling example of clarity is found in Florida Power & Light Co. v. Mid-Valley, Inc., 763 F.2d 1316 (11th Cir.1985), wherein the Eleventh Circuit Court of Appeals held that an engineer was eligible to be indemnified for his own negligence under a contractual clause which stated: “[i]n no event shall Engineer be liable for any ... damage ... whether caused by negligence of Engineer, or otherwise, .. / and Owner shall indemnify and hold Enginéer harmless from any such damages or liability.” Id. at 1318. And, in Church & Tower of Florida, Inc. v. Bellsouth Telecommunications, Inc., 936 So.2d 40 (Fla. 3d DCA 2006), the Third District Court of Appeal held an indemnity provision that required indemnity “caused in part (whether joint, concurrent, or contributing) or in whole by any act, omission, default, or negligence (whether active or passivé) of the Indemnitees,” id. at 41, obligated the indemnitor to indemnify the indemnitee “for all liabilities alleged' to have been caused by [the' indemnitee] arising from or connected with the work performed[.]” Id. at 42. But see H & H Painting & Waterproofing Co. v. Mech. *102 Masters, Inc., 923 So.2d 1227 (Fla. 4th DCA 2006) (holding indemnity provision in lease which Stated that lessee shall indemnify lessor “from any claims of third parties for loss,- injury and damage ... arising out of Lessee’s possession, use, maintenance or return of Equipment” did not entitle lessor of heavy equipment to contractual indemnity from lessee for lessor’s alleged negligence); Fla. Power & Light Co. v. Elmore, 189 So.2d 522 (Fla. 3d DCA 1966) (holding that the words “against any liabilities whatsoever” did not constitute “clear and unequivocal” language sufficient to indemnify the indemnitee against its own negligence).
In the present case, applying the foregoing principles, ATC argues no such explicit intent for it to indemnify SET for its own wrongful acts when they are held jointly liable can be found in clear and unequivocal terms in paragraph 9. Below, ATC’s counsel coneéded its duty under paragraph 9(a)(iv) to indemnify SET for ATC’s acts of negligence, but contended that that section did not contain the necessary explicit language, “in whole or in part,” to extend its duty to indemnify to encompass SET’s wrongful acts. ATC points out that due to the lack of explicit language in paragraph 9(a)(iv), SET and the trial court were forced to rely on the phrase “in whole or in part” found in paragraph 9(a)(i). Under that clause, ATC asserts it is obligated.to indemnify SET for liability, due only to “Carrier’s failure .... to comply, in whole or in part, with any of its obligations” under the contract. Reading that clause in conjunction with paragraph 9(a)(iv), according to ATC, would render the express language of paragraph 9(a)(iv) superfluous,. We agree.
Based on the principles expressed in University Plaza and Charles Poe Masonry, ATC’s alleged duty to indemnify SET for SET’s own misconduct must unequivocally arise'from the language in paragraph 9(a)(i), because-the language in paragraph 9(a)(iv), as was true of the indemnity clauses in the above-cited cases, demonstrates “nothing more than an undertaking by [ATC] to hold [SET] harmless from any vicarious liability.” Charles Poe Masonry, 374 So.2d at 489. The trial court in this instance should not have conflated the two clauses to create the duty of indemnification. This case cannot be compared favorably to Camp, Dresser & McKee, Inc. v. Paul N. Howard Co., 853 So.2d 1072, 1077 (Fla. 5th DCA 2003), in which the Fifth District Court of Appeal did compare and combine two clauses in the, indemnity contract. The first indemnity provision, 6.30, was described as
almost verbatim the indemnification provision contained in the American Institute of Architects (AIA) Standard Document A2Ó1 for General Conditions of the Contract for Construction. The United States Supreme Court has cited this language as being a paradigm of clarity in shifting the risk of a negligent indemni-tee’s loss to the indemnitor,” citing United States v. Seckinger, 397 U.S. 203, 212, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970).
853 So.2d at 1077. The second indemnity provision, 6.32, stated: “The obligations of CONTRACTOR [Howard] under paragraph 6.30 shall not extend to the liability -of ENGINEER [CDM], his agents or employees arising but of the preparation or approval of maps, drawings,-opinions, reports, surveys, Change Orders, designs or specifications.” Id. Reading the language of the two provisions together, the Fifth District was convinced “it is even more clear that the intent of the parties was to indemnify CDM for any claim arising out of [the] negligence of Howard or its subcontractors even if CDM was also negligent.” Id. at 1078.
The intent of the parties was undeniable in Camp, Dresser & McKee. We hold a *103 similar conclusion cannot be made>by reading paragraphs 9(a)(i) and 9(a)(iv) together, as did the trial court. Paragraph 9(a)(iv) does not refer back to paragraph 9(a)(i), and paragraph 9(a)(i) is anything but “ ‘a paradigm of clarity,’ ” Id. at 1077 (quoting Seckinger, 397 U.S. at 212, 90 S.Ct. 880). To be sure, the terms com tained in paragraph 9(a)(i) include the requisite phraseology, “in whole or in part,” as cited in Charles Poe Masonry ánd its progeny, but that phrase must be read in conjunction with' the whole clausé, which ties SET’s right to indemnification to ATC’s “failure to comply, in whole or in part, with any of its obligations” under the contract. Jackson’s allegations' against SET, however, were not predicated ón a breach of any contractual obligations between ATC and SET but claimed, instead, that SET negligently designed and assembled an unreasonably dangerous mechanism (the entry gate) and negligently maintained its premises by using an unreasonably dangerous machine to control ingress and egress to and from its property. Nothing in the language of either paragraph 9(a)(i) or 9(a)(iv) would contemplate indemnification for those acts of negligence committed by SET. In this respect, we do find apropos the observation made by the Fourth District Court of Appeal in H & H Painting:
Mechanic Masters argues that when the indemnity clause is read together with other provisions of the lease, it satisfies the rule of University Plaza and Charles Poe Masonry. However, if a contractual indemnity provision requires reference to other parts of the contract to ascertain its meaning, then it does not contain the clear and unequivocal .terms that University Plaza and Charles Poe Masonry require.
923 So.2d at 1229.
For the reasons expressed, we conclude paragraph 9 does not contain clear and unequivocal terms providing that ATC shall indemnify SET .for its own acts of misconduct. • Consequently we reverse the trial court’s order entering summary final judgment in favor, of SET. On remand, the trial court is directed to grant ATC’s Motion for Rehearing and/or Reconsideration and to enter summary final judgment in ATC’s favor.
REVERSED and REMANDED for further proceedings consistent with.this opinion.
LEWIS and WINOKUR, JJ., concur.

. The supreme court asserted that in the context presented, "the phraseology logically relates to the tenant's occupation of the leased premises — not some outside (though proximately close) independent act of negligence of the landlord.... It might be likened to a ‘common stairway’ in an apartment com, plex.... One would not expect liability to extend under a shopowner’s policy for a landlord’s negligently maintained common walkway or mall in front of a series of shops." 272 So.2d at 512.

. Recently, in Sanislo v. Give Kids the World, Inc., 157 So.3d 256, 262-64 (Fla.2015), the supreme court endorsed the principles in University Plaza, Charles Poe Masonry, and Cox Cable insofar as they applied to indemnity clauses, but held those same principles were not applicable to exculpatory clauses. Id. at 264.